## B & D APPRAISALS

v.

## GAUDETTE MACHINERY MOVERS, INC. and Tri–State Motor Transit Co.,

v.

## FIREMAN'S FUND INSURANCE COMPANIES.

**Civ. A. No. 88–0581 L.**

United States District Court, D. Rhode Island.

Dec. 21, 1990.

Richard D. Boriskin, Providence, R.I., for Gaudette.

Raymond LaFazia, of Gunning, LaFazia & Gnys, Inc., Providence, R.I., for Fireman's Fund.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

The only matter remaining for decision in this case is the third-party claim of Gaudette Machinery Movers, Inc. (Gaudette) against third-party defendant, Fireman's Fund Insurance Companies (Fireman's Fund). The matter is before the Court on cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Third-party plaintiff Gaudette has brought this action against Fireman's Fund, its former insurance company, to recover the costs it incurred in defending itself against a suit tried before a jury in this Court in the fall of 1989. As the facts are undisputed, both parties seek to have the liability, or lack thereof, for the legal costs established in a summary judgment proceeding.[1] After hearing oral arguments on this issue, the motions have been duly considered and are now in order for decision.

## BACKGROUND

Gaudette is a common carrier, engaged in the business of transporting goods, with headquarters in Lincoln, Rhode Island. During the pertinent time period, June, 1988, Gaudette was insured for liability for damage to consigned freight by Fireman's Fund of Boston, Massachusetts.

In June, 1988, a firm called B & D Appraisals (B & D) purchased a gold mixing machine at an auction in St. Petersburg, Florida. B & D planned to sell the machine to Leach & Garner, a Massachusetts jewelry manufacturer. To that end, B & D contracted with Gaudette to ship the machine to Massachusetts. Gaudette, in turn, hired Tri–State Motor Transit Company (Tri–State) to transport the machine north. En route, the machine fell off Tri–State's truck and was seriously damaged. When the machine finally arrived in Massachusetts, Leach & Garner refused to buy it, and B & D sold it, in damaged condition, for a greatly reduced price.

B & D then sued Gaudette and Tri–State to recover its loss. Gaudette notified Fireman's Fund of the claim. Fireman's Fund refused to participate in Gaudette's defense and stated that the incident was not covered by Gaudette's policy. The trial proceeded with Gaudette employing its own legal counsel. At the close of all the evidence, this Court directed a verdict for plaintiff, ruling that defendants Gaudette and Tri–State were both liable for the loss. The issue of damages was submitted to the jury, who fixed B & D's loss at $45,360.00. Tri–State filed a motion to amend the judgment, which this Court denied. *B & D Appraisals v. Gaudette Machinery Movers, Inc. and Tri–State Motor Transit Co.*, 733 F.Supp. 505 (D.R.I.1990). Tri–State then paid B & D the full amount of the judgment.

Consequently, Gaudette is not responsible for paying any part of the judgment to B & D. However, Gaudette did incur litigation costs and attorney's fees in defending the claim. Gaudette now seeks to have these expenses reimbursed by Fireman's Fund.

## DISCUSSION

In essence, the dispute here is over how to interpret the provisions of the insurance policy issued by Fireman's Fund to Gaudette, specifically whether or not Fireman's Fund had a duty to defend Gaudette against claims which might be covered by the policy. Fireman's Fund maintains that the provision in question, paragraph # 13,

---

1. Technically-speaking, Gaudette's motion is for partial summary judgment because the amount of its litigation expenses has not yet been established.

gave it the option to defend suits against the insured, but did not obligate it to provide a defense. Gaudette argues that the provision is ambiguous and subject to more than one reasonable interpretation, and, as a result, must be interpreted in favor of Gaudette. For the following reasons, the Court holds that Fireman's Fund did not have an obligation to defend Gaudette against the suit brought by B & D.

 The duty to defend found in many insurance policies is a contractual duty. If there is no contract to defend, there is no duty to defend. *Crown Center Redevelopment Corp. v. Occidental Fire & Cas. Co. of North Carolina*, 716 S.W.2d 348, 357 (Mo.App.1986), 14 *Couch on Insurance 2d* § 51:35 (1982). There is no common law duty to defend which may be imposed by the courts. *All–Star Insurance Corp. v. Steel Bar, Inc.*, 324 F.Supp. 160, 163 (N.D. Ind.1971). It is necessary, therefore, to analyze the precise wording of the insurance policy to determine the extent of the insurer's duty. *Haines v. St. Paul Fire & Marine Ins. Co.*, 428 F.Supp. 435, 437 (D.Md.1977).

 The full text of the disputed paragraph in the insurance policy issued to Gaudette is as follows:

13. ADMISSION OF LIABILITY: The Insured shall not voluntarily admit any liability nor settle any claims nor incur any expenses (except as provided for in the preceding paragraph) without the specific authority of this Company, nor shall the Insured interfere with any negotiations for settlements carried on between this Company and the owners of the property. *In event of legal action being brought against the Insured in respect to alleged loss or damage which might constitute a claim under this policy, the Insured shall give immediate notice to this Company, and this Company reserves the right at its sole option to defend such action in the name and on behalf of the Insured and will pay all legal expenses incurred by this Company in connection with any action it undertakes to defend,* also any judgment against the Insured subject, however, to all the conditions and limitations provided for herein. (emphasis added)

The role of the insurance company in defending its insured against legal liability is described as both a right and a duty. An insurance company is apt to want exclusive control over litigation involving its insured, and, in exchange, will guarantee the insured services in this regard, in order to maintain control. 14 *Couch on Insurance 2d* § 51:35. In Gaudette's insurance policy, however, Fireman's Fund managed to acquire the *right* to exclusive control over potential litigation, without taking on the *duty* to defend Gaudette in all instances.

The distinction between the right and the duty to defend becomes clearer when Gaudette's policy is compared with a typical "duty to defend" provision in another insurance policy. For example, in *Employers' Fire Insurance Company v. Beals*, where the Rhode Island Supreme Court found a duty to defend on the part of the insurance company despite a dispute about whether or not the loss was covered by the policy, the comparable provision read, "... and the Company shall defend any suit against the Insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent * * *." 103 R.I. 623, 625, 240 A.2d 397, 399 (1968). Similar language can be found in *Flori v. Allstate Insurance Company*,[2] 120 R.I. 511, 513, 388 A.2d 25, 26 (1978). (Gaudette relies upon *Flori*, as wells as *Beals*, in its effort to demonstrate Fireman's Fund duty to defend.) See also *Thomas v. American Universal Ins. Co.*, 80 R.I. 129, 133, 93 A.2d 309, 312 (1952); *Schurgast v. Schumann*,

**2.** The first footnote in *Flori* sets out Allstate's duty to defend provision:

"Allstate shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient * * *."

156 Conn. 471, 242 A.2d 695, 704 (1968); *Thoresen v. Roth*, 351 F.2d 573, 576 (7th Cir.1965); *Koon v. International Ins. Co.*, 456 F.Supp. 49, 50 (N.D.Miss.1978). (For suits involving clauses similar to the one in the case before the Court, where no duty to defend was found, see *Davis Constructors & Engineers, Inc. v. Hartford Accident and Indemnity Co.*, 308 F.Supp. 792, 794 (M.D.Ala.1968); *City of Peoria v. Underwriter's at Lloyd's London, Unincorporated*, 290 F.Supp. 890, 892 (S.D.Ill.1968), *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 536 F.2d 730, 736 (7th Cir. 1976).

It is clear to the Court that the insurance companies involved in *Beals, Flori* and the other cases assumed a duty to defend their insureds against litigation that was far more extensive than anything hinted at in the policy issued by Fireman's Fund to Gaudette. Fireman's Fund wanted the right to defend Gaudette, *"at its sole option."* That was what was written into the policy and contracted to by the parties, and it is therefore binding upon them now.

■ Gaudette maintains that paragraph # 13 of the policy is ambiguous and thus must be interpreted in its favor. It is true that a trial judge must construe an ambiguous insurance policy according to the rules established for the construction of contracts. *Colagiovanni v. Metropolitan Life Insurance Co.*, 57 R.I. 486, 488, 190 A. 459 (1937). If the language in the policy yields more than one reasonable interpretation, the policy will be construed *against* the insurer and the interpretation that favors the insured will be adopted. *Bush v. Nationwide Mutual Insurance Company*, 448 A.2d 782, 784 (R.I.1982); *Goucher v. John Hancock Mutual Life Insurance Co.*, 113 R.I. 672, 681, 324 A.2d 657, 662 (1974). If the language, on the other hand, is clear, the court must interpret the policy according to the plain meaning of its terms. *Gleason v. Merchants Mutual Insurance Co.*, 589 F.Supp. 1474, 1480–81 (D.R.I.1984); *Malo v. Aetna Casualty and Surety Co.*, 459 A.2d 954, 956 (R.I.1983).

■ The final clause of disputed paragraph # 13 states that when Fireman's Fund exercises its right to defend Gaudette, Fireman's Fund will pay all legal expenses and "also any judgment against the insured." Gaudette's argues that the omission of anything about the opposite scenario, when Fireman's Fund elects *not* to defend Gaudette, creates an ambiguity. Gaudette reasons that if Fireman's Fund may refuse to defend Gaudette, it may also, by implication, refuse to pay any judgment that results from a claim made by a third party against Gaudette.

The Court does not believe such an interpretation is indicated by the language. As the Texas Court of Civil Appeals stated, "It is generally held that the obligation of an insurer to defend and its obligation to pay a loss are several …" *Westchester Fire Insurance Company v. Rhoades*, 405 S.W.2d 812, 815 (1966). This notion was expressed by Judge Selya when he wrote that an insurance company's obligations to defend and indemnify are "correlative, not coterminous." *Ryan v. Royal Insurance Co. of America*, 916 F.2d 731, 735 (1st Cir.1990). Gaudette attempts to create an ambiguity by blurring the distinction between these two duties; but, in fact, they are separate.

It appears clear to the Court that paragraph # 13 sets out the following simple scheme: when Fireman's Fund elects to defend Gaudette, it will pay all costs incurred, as well as any judgment. When Fireman's Fund elects not to defend Gaudette itself, it can also refuse to pay any legal expenses. However, whether or not Fireman's Fund has chosen to defend Gaudette, nothing in paragraph # 13 abrogates its duty to pay a judgment against Gaudette for any claims that are within the scope of the policy's coverage. The obligation to indemnify for losses is the subject matter of the entire 6–page policy. It is unreasonable to think that Fireman's Fund intended to limit that obligation by an oblique omission in paragraph # 13. Paragraph # 13 clearly delineates Fireman's Fund's responsibilities when it elects to defend Gaudette; it is absolutely silent

about the consequences of Fireman's Fund decision not to defend Gaudette.

The Court will not read any ambiguous construction into the policy's silence. The language is clear and will be interpreted according to its plain meaning: Fireman's Fund has the right to defend Gaudette at its sole option; when Fireman's Fund elects to defend Gaudette, it will also pay legal costs.

An examination of the entire policy reveals the logic underlying paragraph #13's limitations. The policy, in the main, covers Gaudette "for loss or damage to lawful goods and merchandise while in the custody or control of the insured ..." Under the policy's "Contingent Liability Endorsement," Gaudette paid a reduced premium and received very limited coverage for loss of consigned goods while in the custody of other carriers. That Endorsement provides:

> "In Consideration of the reduced rate (.25), for Coverage of Goods in Custody of other Carriers, The Company shall not be liable for payment of any claims under the policy, except:
> A. When the carrier of the property lost or damaged is not legally liable for such loss or damage, or
> B. After the Insured has made all reasonable and proper efforts to collect the amount of loss or damage from the carrier, but has been unable to do so due to declination of liability by the Carrier, or the carrier's inability to pay."

In this case, the insurer declined to defend because it knew that B & D's machine was damaged while in the custody of Tri-State.

Under the policy as written, Fireman's Fund, took the risk that in declining to defend there might later be a judgment against Gaudette for which it became liable to pay. Clearly, this is a risk that Fireman's Fund was willing to take. In the case before the Court, Fireman's Fund's gamble paid off: though Gaudette was found liable for the loss by the jury, Tri-State paid the judgment and Fireman's Fund incurred no obligation to pay such and no expenses in defending Gaudette.

The motion of third-party defendant Fireman's Fund for summary judgment is hereby granted; that of third-party plaintiff Gaudette is denied. The Clerk of this Court shall enter judgment forthwith for third-party defendant Fireman's Fund Insurance Companies on the third-party complaint filed by Gaudette Machinery Movers, Inc.

*It is so Ordered.*