THE OHIO CASUALTY INSURANCE COMPANY, APPELLEE, V.
CARMAN CARTAGE COMPANY, INC., DOING BUSINESS AS
CARMAN CARTAGE CO., APPELLANT.

636 N.W.2d 862

Filed December 21, 2001. No. S-00-915.

James Allen Davis and Travis Thorne Bennington, of Davis & Associates, for appellant.

Kevin J. Dostal and Thomas M. Locher, of Locher, Cellilli, Pavelka & Dostal, L.L.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

STEPHAN, J.

In this declaratory judgment action, the district court for Douglas County determined as a matter of law that under a commercial inland marine insurance policy, the insurer had no duty to defend a property damage claim against its insured and was therefore entitled to summary judgment in its favor. We reach the same conclusion and therefore affirm.

## BACKGROUND

Carman Cartage Company, Inc. (Carman Cartage), is a common carrier engaged in the interstate truck transport of cargo within the United States. The Ohio Casualty Insurance Company (Ohio Casualty) issued a commercial inland marine insurance policy insuring Carman Cartage for the period January 1, 1997, to January 1, 1998. The policy included a "Trucker's Motortruck Cargo Coverage Form" which obligated Ohio Casualty to pay for loss to property for which the insured was "liable by law as a common carrier . . . under tariff, bill of lading or shipping receipt" when the loss was caused by one of several occurrences, including fire, explosion, accidental collision, and other perils. This form further provided that "[t]he most we will pay for 'loss' is the applicable Limits of Insurance shown in the Declarations," which state a limit of $100,000 per unit.

On February 6, 1997, Carman Cartage was transporting a cargo of beef under contract with American President Lines (APL) when an accident occurred, resulting in damage to the cargo. APL asserted a cargo loss claim against Carman Cartage in the approximate amount of $140,000. Carman Cartage notified Ohio Casualty of the claim and stated its position that the

loss had a maximum value of $86,999.66. After investigating the loss and attempting unsuccessfully to settle the claim within the policy limit of $100,000, Ohio Casualty paid that amount to APL on behalf of Carman Cartage. Ohio Casualty obtained a receipt for this payment but did not secure a release of claims on behalf of Carman Cartage. Subsequently, APL filed suit against Carman Cartage seeking approximately $40,000 over and above the payment made by Ohio Casualty. Carman Cartage tendered defense of this claim to Ohio Casualty, which rejected the tender based upon a denial that it had a duty to defend under the terms of the policy.

Ohio Casualty then brought this action for a declaratory judgment determining its rights and obligations under the policy. Carman Cartage counterclaimed, alleging negligent failure to secure a waiver of claims, breach of fiduciary duty, and breach of contract. Ohio Casualty moved for summary judgment, which the district court granted based upon its determination that Ohio Casualty had merely a right and not a duty to defend under the plain language of the policy. Carman Cartage perfected this timely appeal, which we removed to our docket on our own motion pursuant to our authority to regulate the dockets of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Carman Cartage assigns that the trial court erred (1) in ruling that Ohio Casualty did not owe Carman Cartage a duty to defend it from the third-party suit, (2) in failing to recognize the common-law principle that an insurer owes its insured a fiduciary duty to secure a release of claims on behalf of its insured when it pays a third-party claim in full, and (3) in granting summary judgment when genuine issues of material fact exist regarding whether Ohio Casualty knowingly overpaid the third-party claim and whether the cargo was a total loss.

## STANDARD OF REVIEW

The interpretation of an insurance policy is a question of law. *Tighe v. Combined Ins. Co. of America*, 261 Neb. 993, 628 N.W.2d 670 (2001). In an appeal from a declaratory judgment, an appellate court, regarding questions of law, has an obligation

to reach its conclusion independently of the conclusion reached by the trial court. *Continental Western Ins. Co. v. Conn, ante* p. 147, 629 N.W.2d 494 (2001).

 Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Woodward v. Andersen*, 261 Neb. 980, 627 N.W.2d 742 (2001); *Dossett v. First State Bank*, 261 Neb. 959, 627 N.W.2d 131 (2001). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Skinner v. Ogallala Pub. Sch. Dist. No. 1, ante* p. 387, 631 N.W.2d 510 (2001).

## ANALYSIS

The term "inland marine coverage" encompasses a variety of specialized insurance coverages, including coverage for loss or damage to goods while in transit. 11 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 154:3 at 154-11 (rev. ed. 1998). Inland marine insurance "function[s] basically as a form of property insurance, even though the policy may explicitly contemplate that the value of the property will be payable to the owner rather than the insured." 11 Russ & Segalla, *supra*, § 154:5 at 154-14. In this case, it is undisputed that the loss in question was of a type covered under the policy and that the policy limit was $100,000. The issues presented are whether the insurer had either a duty to defend under the policy or a common-law duty to obtain a release of the insured as part of any settlement with the claimant.

### DUTY TO DEFEND

██ In construing liability insurance policies, we have held that an insurer's duty to defend is broader than its duty to indemnify. *John Markel Ford v. Auto-Owners Ins. Co.*, 249 Neb. 286, 543 N.W.2d 173 (1996); *Allstate Ins. Co. v. Novak*, 210 Neb. 184, 313 N.W.2d 636 (1981). The nature of the duty to defend is defined by the insurance policy as a contract. *Union Ins. Co.*

*v. Land and Sky, Inc.*, 247 Neb. 696, 529 N.W.2d 773 (1995). In this case, however, we are not considering a liability insurance policy, but, rather, an inland marine policy providing trucker's motortruck cargo coverage. The threshold question is not the nature or scope of a duty to defend, but, rather, whether any such duty exists under the policy.

An insurance policy is a contract. *Callahan v. Washington Nat. Ins. Co.*, 259 Neb. 145, 608 N.W.2d 592 (2000). In an appellate review of an insurance policy, the court construes the policy as any other contract to give effect to the parties' intentions at the time the writing was made. Where the terms of a contract are clear, they are to be accorded their plain and ordinary meaning. *Austin v. State Farm Mut. Auto. Ins. Co.*, 261 Neb. 697, 625 N.W.2d 213 (2001); *Callahan v. Washington Nat. Ins. Co., supra.* An insurer's duty to defend is usually a contractual duty, rather than one imposed by operation of law. 14 Russ & Segalla, *supra,* § 200:5. Thus, we look to the insurance policy itself to determine whether Ohio Casualty undertook a duty to defend Carman Cartage under its commercial inland marine insurance policy.

Carman Cartage asserts that such a duty arises from a portion of the policy conditions entitled "Privilege to Adjust With Owner," which provides:

> In the event of "loss" involving property of others in your care, custody or control, we have the right to:
> 1. Settle the "loss" with the owners of the property. A receipt for payment from the owners of that property will satisfy any claim of yours.
> 2. Provide a defense for legal proceedings brought against you. If provided, the expense of this defense will be at our cost and will not reduce the applicable Limit of Insurance Under this insurance.

Ohio Casualty argues that this language creates a *right* but not a *duty* to defend.

Although we have not had occasion to determine whether this precise policy language creates a duty to defend, we considered similar language in *Cornhusker Agrl. Assn. v. Equitable Gen. Ins. Co.*, 223 Neb. 618, 392 N.W.2d 366 (1986). That case posed the question of whether an excess liability insurer undertook a duty to defend based upon the following policy language:

"The Insured shall be responsible for the investigation, settlement or defense of any claim made or suit brought or proceeding instituted against the insured *which no underlying insurer is obligated to defend. . . .*

"The company shall have the right and shall be given the opportunity to associate with the insured or its underlying insurers, or both, in the defense and control of any claim, suit or proceeding which involves or appears reasonably likely to involve the company and in which event the insured, such insurers and the company shall cooperate in all things in defense of such claim, suit or proceeding."

(Emphasis in original.) *Id.* at 626-27, 392 N.W.2d at 371-72. We held that "[t]he trial court correctly found that the language . . . 'expressly give[s] Equitable the *right* to defend [but] do[es] not provide an express duty to defend.'" (Emphasis in original.) *Id.* at 627, 392 N.W.2d at 372.

Case law from other jurisdictions is also instructive on the issue. In *B & D Appraisals v. Gaudette Machinery Movers*, 752 F. Supp. 554 (D.R.I. 1990), a machine being shipped by a common carrier was damaged in transit. When the owner brought suit to recover its loss, the carrier notified its insurance company, which refused to participate in its defense. The applicable portion of the policy provided:

"The Insured shall not voluntarily admit any liability nor settle any claims nor incur any expenses . . . without the specific authority of this Company, nor shall the Insured interfere with any negotiations for settlements carried on between this Company and the owners of the property. *In event of legal action being brought against the Insured in respect to alleged loss or damage which might constitute a claim under this policy, the Insured shall give immediate notice to this Company, and this Company reserves the right at its sole option to defend such action in the name and on behalf of the Insured and will pay all legal expenses incurred by this Company in connection with any action it undertakes to defend . . . .*"

(Emphasis in original.) *Id.* at 556. The court concluded that the unambiguous language of the policy gave the insurer only the

right to exclusive control over potential litigation, and not the duty to defend. *Id.*

Similarly, in *City of Peoria v. Underwriter's at Lloyd's London, Uninc.*, 290 F. Supp. 890, 892 (S.D. Ill. 1968), the court interpreted a policy which provided that the insurer "may, 'if they so desire,' 'take over the conduct . . . of the defense of any claim' covered by the policy provisions." The court concluded that this language was clear and created only the right, and not the obligation, to assume the conduct of defense. See, also, *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 536 F.2d 730 (7th Cir. 1976) (holding that right to assume control of defense carries with it no duty to participate in defense).

■ These cases are illustrative of the general rule that "[s]ince the contract terms govern the duty, an insurance policy may relieve the insurer of any duty to defend, or give the insurer the right, but not the duty, to defend." 14 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 200:5 at 200-18 to 200-21 (rev. ed. 1999). We conclude that the applicable language in the policy under consideration clearly and unambiguously gives Ohio Casualty a right to defend claims against its insured and a right to settle such claims, but does not impose a duty upon it to do either.

Contrary to the assertions of Carman Cartage, the policy does create an obligation on the part of the insurer to pay for loss to covered property which results from a covered cause of loss up to the limits of insurance as stated on the policy declarations. It is this obligation to pay which provides the mutuality of obligation upon which the insurance contract is based. By paying the policy limit of $100,000 to APL, Ohio Casualty satisfied that contractual obligation.

### FIDUCIARY DUTY TO SECURE RELEASE

Alternatively, Carman Cartage argues that "[a]n insurer owes its insured a fiduciary duty to secure a release of claims when it pays a claim, in full, on behalf of their [sic] insured." Brief for appellant at 9. It contends that the district court erred in granting summary judgment because there is a genuine issue of material fact regarding whether Ohio Casualty breached this fiduciary duty when it failed to secure a release from APL. Generally, Carman Cartage argues that by failing to fulfill this fiduciary

duty, Ohio Casualty became obligated to defend Carman in the suit brought by APL.

In support of this argument, Carman Cartage relies extensively upon *Aetna Cas. & Sur. Co. v. Sullivan*, 33 Mass. App. 154, 597 N.E.2d 62 (1992). In that case, a liability insurance carrier tendered the full amount of its coverage to a party asserting a personal injury claim against its insured but did not obtain a release. The carrier then sought a declaratory judgment determining that by virtue of such tender, it was discharged from its duty to defend its insured in a suit brought by the third party. In addressing the issue, the court specifically reasoned that "[s]ince the source of the duty to defend is the contractual agreement, . . . we consider, first, the applicable provision of the insurance policy in effect at the time of the accident." (Citation omitted.) *Id.* at 155, 597 N.E.2d at 63. The language of the paragraph of the policy entitled " 'Our Duty to Defend You and Our Right to Settle' " provided that the insurer had " 'the right and duty to defend any lawsuit' " and that the " 'duty to settle or defend ends when we have paid the maximum limits of coverage under this policy.' " *Id.* The court held that the policy thus made it "absolutely clear" that the insurer had a duty to defend, noting that the right of an insured motorist to have his insurer provide a defense is a great benefit to the insured. *Id.* at 157, 597 N.E.2d at 64. The court reasoned that a fair reading of the language was that the insurer was discharged from its contractual duty to defend only "if it should make a payment equal to the maximum policy limits either to settle a claim against the insured or in total or partial satisfaction of a judgment against the insured upon conclusion of the litigation." *Id.* It then proceeded to the analysis upon which Carman Cartage relies in this case:

> The situation is different, however, when an insurer seeks to pay the full amount of coverage without a judgment and without obtaining a release of the insured from at least one personal injury claimant. Were we to interpret the policy language in that situation as Aetna does, an insurer would be free, regardless of the merits of a personal injury claim, to tender the coverage limits to the claimant and decline to defend further whenever the insurer anticipates that the cost of providing a defense would exceed the amount of

coverage. The duty to defend generally relied upon by insured motorists would, thus, be significantly nullified in a large number of cases.

*Id.* at 158, 597 N.E.2d at 65. Employing a similar rationale, the court in *Emcasco Ins. Co. v. Davis*, 753 F. Supp. 1458 (W.D. Ark. 1990), held that a liability insurer could not relieve itself of an express contractual duty to defend by interpleading its policy limits. See, also, *Stanley v. Cobb*, 624 F. Supp. 536 (E.D. Tenn. 1986); *Samply v. Integrity Ins. Co.*, 476 So. 2d 79 (Ala. 1985).

Contrary to the contention of Carman Cartage, none of these cases recognize a common-law fiduciary duty on the part of an insurance carrier to obtain a release of the insured in conjunction with a settlement of claims. In each case, the payment of policy limits without obtaining a release or otherwise effecting a settlement with the claimant was held insufficient to extinguish the insurer's *contractual* duty to defend its insured. Here, for the reasons we have stated, the policy at issue created no such contractual duty. Accordingly, the reasoning of these cases is inapposite to the issues before us.

Carman Cartage also argues that a duty on the part of an insurer to secure a release of claims against its insured as a part of a settlement can be implied from our holdings in *Hadenfeldt v. State Farm Mut. Auto. Ins. Co.*, 195 Neb. 578, 239 N.W.2d 499 (1976), and *Olson v. Union Fire Ins. Co.*, 174 Neb. 375, 118 N.W.2d 318 (1962). Both of these cases involved causes of action for a bad faith failure of an insurance company to settle a claim within policy limits. We stated in *Olson*:

The liability of an insurer to pay in excess of the face of the policy accrues when the insurer, having exclusive control of settlement, in bad faith refuses to compromise a claim for an amount within the policy limit. The weight of authority is to the effect that when the insurer has the exclusive right to settle a claim within the limits of its liability, it has an option to compromise but no obligation to do so. In the event the insurer elects to resist a claim of liability, or to effect a settlement thereof of such terms as it can get, there arises an implied agreement that it will exercise due care and good faith where the rights of an insured are concerned.

174 Neb. at 379, 118 N.W.2d at 320-21. Based upon this language, Carman Cartage argues that an insurer has a fiduciary duty to use good faith when it "settles" claims and that "settle" by definition includes securing a release when a claim is paid.

This argument ignores the undisputed fact that Ohio Casualty did not "settle" APL's cargo loss claim. It attempted to do so, but was unsuccessful in that effort. Ohio Casualty then paid the full amount of its insurance limit to APL, thus satisfying its contractual obligation under the policy to pay covered losses. Also, as we have noted, Ohio Casualty had no duty to defend Carman Cartage with respect to the APL claim and therefore could not have an "exclusive right" to settle in the same sense as a liability insurer under the reasoning of *Hadenfeldt* and *Olson*. We conclude that these cases furnish no logical support for the argument that Ohio Casualty had a duty to obtain a release of Carman Cartage when it paid its policy limits to APL.

ALLEGED OVERPAYMENT OF CLAIM

Carman Cartage contends there was a genuine issue of material fact as to whether Ohio Casualty overpaid the APL claim. We fail to see how this issue could be material to the primary question of whether Ohio Casualty owed any duty to Carman Cartage after paying its policy limit. If an overpayment was made, it would inure to the benefit of Carman Cartage which is being sued by APL for the difference between the claimed value of the cargo and the amount paid by Ohio Casualty. If no overpayment was made, Ohio Casualty nevertheless satisfied its contractual obligation by paying out its policy limit. In either circumstance, Ohio Casualty had no contractual or common-law duty to defend APL's claim against Carman Cartage for amounts exceeding its liability limit.

CONCLUSION

For these reasons, we agree with the determination of the district court that under the unambiguous language of the commercial inland marine insurance policy, which it issued to Carman Cartage, Ohio Casualty had a right but not a duty to defend its insured against covered cargo loss claims. It did have a duty, however, to pay such claims up to the stated policy limit of $100,000. Having paid that amount to APL, Ohio Casualty satisfied its

obligation to Carman Cartage under the policy. It had neither a contractual nor a common-law duty to defend Carman Cartage against claims by APL that its cargo loss exceeded the amount paid by Ohio Casualty. Finding no error in the entry of summary judgment in favor of Ohio Casualty, we affirm.

AFFIRMED.

MCCORMACK, J., participating on briefs.