683 N.W.2d 374 (2004)
268 Neb. 450
CHIEF INDUSTRIES, INC., a Delaware corporation, appellant and cross-appellee
v.
GREAT NORTHERN INSURANCE COMPANY, appellee and cross-appellant.
No. S-03-619.
Supreme Court of Nebraska.
July 23, 2004.
*377 Daniel E. Klaus, of Rembolt, Ludtke & Berger, L.L.P., Lincoln, for appellant.
Cathleen H. Allen and Roger G. Steele, of Leininger, Smith, Johnson, Baack, Placzek, Steele & Allen, Grand Island, for appellee.
HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

I. NATURE OF CASE
Chief Industries, Inc. (Chief), filed a declaratory judgment action pursuant to Neb.Rev.Stat. §25-21,149 et seq. (Reissue 1995) against Great Northern Insurance Company (Great Northern) in the district court for Hall County. Chief sought a declaration that Great Northern had an obligation pursuant to an insurance policy issued to Chief to provide coverage and to defend Chief in a lawsuit filed against Chief by Arabian Agricultural Services Company (ARASCO) in the U.S. District Court for the District of Nebraska (federal case). The district court found that Great Northern had no duty to defend Chief in the federal case. After judgment was entered against Chief in the amount of $1,466,507 in the federal case, the district court in the instant case determined that the Great Northern policy provided coverage in the sum of $87,927 for part of the damages but that the remaining damages were excluded from coverage under the policy. Chief appeals, and Great Northern cross-appeals. We determine that there is no merit to the appeal and that two aspects of one assignment of error in the cross-appeal have merit. Accordingly, we affirm in part, and in part reverse and remand with directions.

II. STATEMENT OF FACTS
Chief previously appealed, and Great Northern cross-appealed, a November 5, 1998, order in which the district court had determined that Great Northern had no duty to defend in the federal case and that the Great Northern policy upon proper proof could provide coverage for unspecified damages not otherwise excluded. Chief Indus. v. Great Northern Ins. Co., 259 Neb. 771, 612 N.W.2d 225 (2000) (Chief Indus. I). In our opinion in that appeal, we stated the facts of the case as follows:
Chief is a Delaware corporation with its principal place of business in Grand Island, Nebraska. Great Northern is an insurance corporation organized and existing under the laws of the State of Minnesota and is authorized to do business in the State of Nebraska. The insurance policy at issue herein was issued to Chief by Great Northern for the period of July 1, 1995, to July 1, 1996.
In 1991, Chief Industries U.K. Ltd. (Chief U.K.), a wholly owned subsidiary of Chief's, entered into a contract with ARASCO to manufacture, sell, and supervise the construction of 16 grain bins and related equipment in Damman, Saudi Arabia. Chief U.K. subsequently fulfilled the terms of its contract with ARASCO.
ARASCO alleges that the grain bins collapsed on October 10, 1995, causing damage to the grain bins, equipment attached to the grain bins, and the grain which was stored in the bins. On October 11, Chief notified its insurance agent of the occurrence, and Great Northern commenced an investigation. On October *378 24, ARASCO made written claims against Chief and Chief U.K. for the damages caused by the collapse of the grain bins.
On November 17, 1997, Great Northern notified Chief of its position regarding coverage of the claims made by ARASCO. Great Northern acknowledged that there had been an "occurrence" during the policy period which resulted in "property damage." However, it concluded that the exclusions set forth in paragraphs 12 and 13 of the insurance contract applied to exclude property damage to the named insured's products arising out of such products or any part of such products. Great Northern's position was that since a large portion of the claim by ARASCO involved the value of the 16 grain bins, the value of the bins was excluded from coverage. Great Northern informed Chief that exclusion 13 precluded coverage for property damage to "work performed by or on behalf of [Chief] arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith." The letter stated that some of the damage alleged may have arisen out of work performed under the guidance of a foreman hired by Chief U.K. Great Northern also informed Chief that the insurance contract did not apply to suits brought in the United States. In addition, Chief was informed that "should Arasco pursue this claim further, or file suit on this matter in the United States, this amendment would be triggered and you would have to look to your domestic liability insurer for coverage."
On April 2, 1998, ARASCO sued Chief in the U.S. District Court for the District of Nebraska, asserting damages arising out of the collapse of the grain bins. The lawsuit set forth claims for breach of contract, breach of express warranties, and products liability. When Chief notified Great Northern of the lawsuit, Great Northern denied coverage and declined to investigate or defend Chief in the lawsuit.
On May 6, 1998, Chief commenced this action for declaratory judgment in the district court for Hall County, Nebraska. Pursuant to Neb.Rev.Stat. §25-21,149 et seq. (Reissue 1995), Chief requested the trial court to declare the rights of the parties arising by virtue of the insurance contract. Specifically, Chief requested (1) that a judgment be entered declaring that Great Northern's insurance policy provides coverage for the claims that ARASCO asserts in its lawsuit against Chief; (2) that Great Northern be ordered to investigate and provide Chief a defense in that lawsuit and be ordered to pay any judgment entered against Chief in that lawsuit to the limits of coverage provided in the contract; (3) that Chief be awarded as damages the expenses, including attorney fees, it incurs in defending the lawsuit brought against it by ARASCO and in bringing the declaratory judgment action; and (4) such other relief as the trial court deemed proper.
Both parties moved for summary judgment. The trial court determined that there were two issues presented: whether the insurance contract provided coverage and whether Great Northern had a duty to defend.
The applicable portion of the policy provided: "The Company will pay on behalf of the Insured all sums which the Insured shall become obligated to pay as damages by reason of liability to which this insurance applies, imposed by law or assumed by the Insured under any written or oral contract, for bodily injury or property damage, caused by an occurrence and personal injury or *379 advertising injury caused by an offense occurring during the policy period." The exclusions section of the policy provided: "This insurance does not apply: .... 12. to property damage to the named insured's products arising out of such products or any part of such products; 13. to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith."
The trial court concluded there had been an "occurrence" during the policy period which resulted in "property damage" and that the policy applied to at least part of Chief's claims. Thus, the trial court found that Chief was entitled to partial summary judgment, declaring that coverage attached to losses, not otherwise excluded, from the occurrence on October 10, 1995.
Next, the trial court addressed whether Great Northern had a duty to defend. Amendment No. 4 to the insurance policy, entitled "Foreign Suits Only Amendment," stated in part: "This insurance applies anywhere in the world, except the United States of America, its territories and possessions, Puerto Rico and Canada. The settlement, investigation and defense provisions of this contract shall only apply to claims made or suits brought within the policy territory herein defined."
In interpreting the contract, the trial court relied upon the policy language which this amendment replaced. The original contractual provision stated: "This insurance applies anywhere in the world except the United States, its territories and possessions, Puerto Rico and Canada. The settlement, investigation and defense provisions of this contract shall apply to claims made or suits brought anywhere in the world provided such suit emanates from damages caused by an occurrence or offense arising from the Insured's operations in the policy territory described above."
The trial court concluded that since the lawsuit had been filed outside the policy territory, i.e., within the United States, Great Northern had no duty to defend.
The trial court stated: "The end result is that although coverage attaches under the policy to any covered losses occurring as the result of the collapsed grain bins, defendant does not have a duty to defend lawsuits filed within the United States. Whether defendant will ultimately pay the claims of that lawsuit depends on whether such losses are covered under the policy. The Court at this time makes no determination at [sic] to the extent of losses which may be payable under the policy."
Chief Indus. I, 259 Neb. at 773-76, 612 N.W.2d at 227-29.
We concluded in Chief Indus. I that the district court had not fully decided the issue of whether the insurance policy provided coverage and that the November 5 order was not a final, appealable order. We therefore dismissed Chief's appeal and Great Northern's cross-appeal. Id.
On February 5, 2001, the jury in ARASCO's federal case against Chief rendered a verdict in ARASCO's favor. The jury found damages in the following amounts:
A. The amount for damage to the silos themselves:
$1,378,58000
B. The amount for damages incurred as a direct result of the collapse, such as clean-up and inspection, but excluding the damage to the silos themselves (as provided in A above) and to other property (as provided in C below):
$43,42000

*380 C. The amount for damages to other property incurred as a direct result of the collapse, such as to out-buildings damaged at the collapse site (excluding the amounts provided in A and B above);
$450000
D. The amount for increased business expenses:
$40,00700
E. The amount of lost profits:
$000
Based on the jury verdict, the U.S. District Court for the District of Nebraska entered judgment in favor of ARASCO in the federal case in the amount of $1,466,507. The judgment was affirmed on appeal to the U.S. Court of Appeals for the Eighth Circuit. Arabian Agri. Servs. Co. v. Chief Indus., Inc., 309 F.3d 479 (8th Cir.2002).
On November 21, 2002, the parties in this case submitted evidence to the district court on the issue of the amount of damages determined in the federal case which may be covered under the insurance policy Great Northern issued to Chief. A set of 11 stipulated facts was entered. In an order filed April 7, 2003, the court reiterated its conclusion that the "Foreign Suits Only Amendment" relieved Great Northern of its duty to defend Chief in ARASCO's federal case, but the court concluded that the amendment did not exclude coverage for damages awarded to ARASCO unless that coverage was otherwise excluded under the policy.
With regard to coverage, the court determined that the damages of $1,378,580 under subparagraph A of the jury's verdict for "damage to the silos themselves" were excluded from coverage under the policy exclusion for "property damage to the named insured's products arising out of such products or any part of such products." The court rejected Chief's arguments that "the named insured's products" did not include: (1) component parts manufactured by third parties, which Chief asserted totaled $173,011 of the purchase price paid by ARASCO, and (2) component parts manufactured by Caldwell Manufacturing Co. (Caldwell), a division of Chief, which Chief asserted totaled $297,717 of the purchase price paid by ARASCO. The court noted that the policy defined "named insured's products" as "goods or products manufactured, sold, handled or distributed by the named insured or by others trading under [its] name." The court found that "all of the components manufactured by third parties were sold, handled and distributed to ARASCO by Chief or Chief U.K." and that "Caldwell's products are Chief's products and damages to products manufactured by either entity should be treated the same under the terms of the policy." In reaching this determination, the court focused on policy language to the effect that the exclusion was for property damage to the named insured's products arising out of such products "`or any part of such products'" (emphasis supplied by district court) and therefore found that "[a]ll of the silos and all of the parts manufactured by [Chief's] Caldwell [d]ivision are the named insured's products for purposes of coverage" and concluded that damage to the Caldwell components was not covered under the policy.
The court found that the damages which were contained in the jury verdict and listed in subparagraphs B for resulting damages, C for damages to other property, and D for increased business expenses were covered under the policy. The court found that the $43,420 in damages listed in subparagraph B was composed of $7,100 for the cost of inspecting the wreckage and $36,320 for the cost of removing the silo wreckage from the site and that these amounts constituted covered consequential damages related to the property damage *381 to the silos. The court found that the $4,500 in damages listed in subparagraph C was for damage to other property and consisted of damage to an outbuilding which was covered. The court found that the $40,007 in damages listed in subparagraph D for increased business expenses was composed of $29,871 for removing corn stored in the silos from the wreckage site and $10,136 in increased rail contract penalties and that these amounts were covered. The court therefore concluded that Chief should recover the sum of $87,927 and entered judgment against Great Northern and in favor of Chief in that amount. Chief appeals, and Great Northern cross-appeals.

III. ASSIGNMENTS OF ERROR
In its appeal, Chief asserts that the district court erred in (1) concluding that the foreign suits only amendment excused Great Northern from defending Chief in the federal case filed by ARASCO, (2) concluding that the policy excluded coverage for property damage to components that were manufactured by third parties, and (3) concluding that the policy excluded coverage for property damage to components manufactured by Caldwell.
In its cross-appeal, Great Northern asserts that the district court erred in (1) failing to conclude that the foreign suits only amendment precluded coverage for all damages and (2) concluding that the policy covered damages under subparagraph B of the jury's verdict for inspection and removal of silo wreckage and under subparagraph D of the jury's verdict for removal of corn from the collapsed silo.

IV. STANDARD OF REVIEW
The interpretation of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independently of the determination made by the trial court. Guerrier v. Mid-Century Ins. Co., 266 Neb. 150, 663 N.W.2d 131 (2003).

V. ANALYSIS
Both the appeal and cross-appeal raise issues regarding both the application of the foreign suits only amendment and the application of the coverage provisions of the policy. We, therefore, consider all arguments as to each of these two topics together.

1. FOREIGN SUITS ONLY AMENDMENT

(a) Chief's Appeal: Foreign Suits Only Amendment and Duty to Defend
Chief asserts that the district court erred in ruling that where the federal case was brought in the United States and thus outside the defined policy territory, Great Northern had no duty to defend. We conclude that the foreign suits only amendment excused Great Northern of its duty to defend once the federal case was brought in the United States and that the district court was correct in so ruling.
An insurer's duty to defend is usually a contractual duty, rather than one imposed by operation of law. Ohio Cas. Ins. Co. v. Carman Cartage Co., 262 Neb. 930, 636 N.W.2d 862 (2001). The nature of the duty to defend is defined by the insurance policy as a contract. Id. Where the terms of a contract are clear, they are to be accorded their plain and ordinary meaning. Id.
The foreign suits only amendment states in part: "This insurance applies anywhere in the world, except the United States of America, its territories and possessions, Puerto Rico and Canada. The settlement, investigation and defense provisions of this contract shall only apply to claims made or suits brought within the policy territory herein defined." The district court noted *382 that this amendment replaced language which had previously provided," `The settlement, investigation and defense provisions of this contract shall apply to claims made or suits brought anywhere in the world provided such suit emanates from damages caused by an occurrence or offense arising from the Insured's operations in the policy territory described above.'" See Chief Indus. I, 259 Neb. at 775-76, 612 N.W.2d at 229.
Chief argues that the district court erred by focusing on the fact that ARASCO brought suit in the United States, which was admittedly outside the policy territory. Chief argues that the foreign suits only amendment comes into play under two scenarios, one of which occurred in this case and is the scenario which Chief asserts requires a duty to defend. For purposes of this case, Chief claims that under the policy, the duty to defend provisions become relevant where either a claim is made or, alternatively, a suit is brought. Chief argues that where a claim is first made inside the policy territory, a duty to defend arises, notwithstanding the fact that a suit is subsequently brought outside the policy territory, which suit in the absence of an antecedent claim made within the policy territory would not give rise to a duty to defend. Chief asserts that although in this case suit was brought in the United States, the defense provisions apply because a claim had been made either in Saudi Arabia, where the accident occurred, or in the United Kingdom, where Chief U.K. is located, and that both Saudi Arabia and the United Kingdom are within the policy territory. In this regard, we note that the parties stipulated that ARASCO made claims against Chief U.K. on October 24, 1995, and that the federal case was not filed until April 2, 1998.
We reject Chief's arguments. Whether or not a claim was made within the policy territory, the defense obligation that Great Northern sought to avoid through the policy language herein was the defense of a suit outside the policy territory, such as in this case where the suit was brought in the U.S. District Court for the District of Nebraska. For completeness, we note that the parties stipulated in this case that Great Northern undertook to investigate the claim originally made by ARASCO, and the costs of such investigation are not at issue herein.
In its November 5, 1998, order, the district court declared that Great Northern had "no duty to defend the lawsuit filed in the United States District Court for the District of Nebraska." Although Chief argues that the federal case was a mere continuation of the claim that was made within the policy territory and that the investigation of the claim was tantamount to undertaking the defense, the district court correctly read the clear language of the foreign suits only amendment to provide that once the suit was filed outside the policy territory, Great Northern had no duty to defend. It is fundamental that a duty to defend arises when a lawsuit has been filed. See Mapes Indus. v. United States F. & G. Co., 252 Neb. 154, 560 N.W.2d 814 (1997) (in determining whether defense duty exists, insurer's duty to defend action against insured must, in first instance, be measured by allegations of petition against insured). The language of the foreign suits only amendment is consistent with this principle. The district court did not err in concluding that Great Northern had no duty to defend in the federal case, and we reject Chief's first assignment of error.

(b) Great Northern's Cross-Appeal: Foreign Suits Only Amendment and Coverage
Great Northern argues in its cross-appeal that because the federal case was *383 brought in the United States, the foreign suits only amendment not only provides that Great Northern has no duty to defend, it also excludes coverage for all damages. Because the foreign suits only amendment pertains only to the duties to investigate, settle, and defend, we conclude that it does not limit the duty to indemnify for occurrences within the policy territory.
The foreign suits only amendment provides, "This insurance applies anywhere in the world, except the United States of America, its territories and possessions, Puerto Rico and Canada. The settlement, investigation and defense provisions of this contract shall only apply to claims made or suits brought within the policy territory herein defined." The losses at issue in the present case arose from an incident which occurred in Saudi Arabia. The incident therefore occurred within the policy territory, and the indemnification provisions of the insurance policy apply. The second sentence of the amendment limits only the duties to investigate, settle, and defend claims made and suits brought outside the policy territory; it does not limit coverage for occurrences within the policy territory, and it does not nullify the duty to indemnify resulting from a court judgment.
Coverage under an insurance policy or contract is generally understood to consist of two separate and distinct obligations: the duty to defend any suit filed against the insured party and the duty to pay, on behalf of the insured, sums for which the insured shall become legally obligated to pay because of injury caused to a third party by acts of the insured. R.W. v. Schrein, 263 Neb. 708, 642 N.W.2d 505 (2002). We have observed that generally, an insurer's duty to defend is broader than its duty to indemnify. See Ohio Cas. Inc. Co. v. Carman Cartage Co., 262 Neb. 930, 636 N.W.2d 862 (2001). However, we have also stated that because contract terms govern the duty, an insurance policy may relieve the insurer of any duty to defend. Id. Because the duty to defend and the duty to indemnify are separate and distinct obligations, it is possible, if perhaps not commonplace, for an insurer to limit its duty to defend without simultaneously limiting its duty to indemnify. See American States Ins. Co. v. Dastar Corp., 318 F.3d 881 (9th Cir.2003). We conclude that although the clear language of the policy in the present case relieved Great Northern of its duty to defend the federal case, nothing in the policy language simultaneously relieved Great Northern of its duty to indemnify Chief for losses otherwise within the coverage of the policy and established by a court judgment.
The district court did not err in concluding that the foreign suits only amendment did not exclude coverage otherwise provided under the policy, and we therefore reject Great Northern's first assignment of error in its cross-appeal.

2. OTHER COVERAGE PROVISIONS

(a) Chief's Appeal: Coverage for Damage to Components Manufactured by Third Parties and by Caldwell
Chief asserts that the district court erred in declaring that the entire $1,378,580 awarded in the federal case for "damage to the silos themselves" under subparagraph A of the jury's verdict was excluded from coverage under the policy's exclusion for damage to "the named insured's products arising out of such products or any part of such products." Chief specifically argues that the policy covered damage to two categories of components within the grain silo structure: (1) components manufactured by third parties, totaling $173,011 of the purchase price paid by ARASCO, and (2) components manufactured by Caldwell, totaling $297,717 of the purchase price paid by ARASCO. We *384 note that under an amendment to the policy, "Caldwell Manufacturing Co." is a named insured. Upon review of the law and the facts, we reject Chief's arguments with respect to both categories and conclude that the district court did not err in concluding that property damage to such components was not covered under the policy.
With respect to components manufactured by third parties, Chief argues that because such components were not manufactured by Chief, they were not "the named insured's products." Chief asserts that such components were neither integral nor essential to the operation of the grain bin and could be used as distinct products apart from the Chief-manufactured product sold to ARASCO.
Although such components were not manufactured by Chief, we note that the policy defined "named insured's product" to include products "manufactured, sold, handled or distributed by the named insured or by others trading under [its] name." Where the terms of an insurance contract are clear, they are to be accorded their plain and ordinary meaning. Cincinnati Ins. Co. v. Becker Warehouse, Inc., 262 Neb. 746, 635 N.W.2d 112 (2001).
The district court noted that the Chief U.K. managing director testified that all of the component parts manufactured by third parties were "`sold, distributed, and handled'" by Chief and Chief U.K. The evidence shows that Chief's arrangement with ARASCO was that Chief would assemble all the component parts to construct the grain bin structures and that ARASCO would pay Chief for all components used in the structures. We determine that the district court did not err in finding that under the definition provided in the policy, the components manufactured by third parties were "the named insured's products."
With respect to both the components manufactured by third parties and the components manufactured by Caldwell, Chief further argues that damage to such components was not excluded from coverage because the policy excluded coverage for damage to the named insured's products only when the damage arose out of the specific products themselves. Chief argues that because the damage in this case arose out of problems in components manufactured by Chief itself and not out of those components manufactured by others, damage to those components manufactured by third parties and by Caldwell was not excluded from coverage.
In response to this argument, the district court noted that the policy language provided that the exclusion was for property damage to the named insured's product arising out of such products "'or any part of such products'" (emphasis supplied by district court). The district court determined that the exclusion applied to damage to all components because under the language of the policy, the exclusion applied whether the damage arose out of the components themselves or out of other components that were part of the named insured's products. It is evident that the district court found the entire structure to be Chief's products and therefore concluded that damage to the entire structure was excluded from coverage regardless of what specific component gave rise to the damage.
We find no error in the district court's findings that the components manufactured by third parties and by Caldwell were part of "the named insured's products" under the policy and that damage to such components was excluded under the policy exclusion for damage to the named insured's products arising out of such products or any part of such products. *385 We therefore reject Chief's second and third assignments of error, and we affirm that portion of the district court's order in which it held that the entire $1,378,580 awarded for "damage to the silos themselves" under subparagraph A of the jury's verdict was excluded from coverage.

(b) Great Northern's Cross-Appeal: Coverage for Costs of Clean-up, Inspection, and Removal of Corn
Great Northern asserts in its cross-appeal that the district court erred in ruling that the following damages awarded by the jury in the federal case were covered under the policy: (1) costs of $7,100 awarded under subparagraph B for inspection of the silo wreckage, (2) costs of $36,320 awarded under subparagraph B for removing the silo wreckage from the site of the silo collapse, and (3) costs of $29,871 awarded under subparagraph D for removal of corn from the wreckage site. Because we conclude that the items of damage under subparagraph B were excluded from coverage under the policy, we agree with Great Northern that the district court erred when it declared there was coverage for these items. We conclude, however, that the district court did not err in concluding that there was coverage for the costs of $29,871 awarded under subparagraph D for removal of corn.
The policy provides coverage for bodily injury or property damage and defines "property damage" as follows:
1. physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or
2. loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.
Great Northern argues that damages for inspection of the silo wreckage, for removal of the silo wreckage, and for removal of the corn from the wreckage site were not "property damage" under the policy definition and therefore were not covered under the policy. Chief argues in response that such damages are covered because they are consequential damages of the property damage to the silo.
We note that, as discussed above, the policy excludes coverage for "property damage to the named insured's products arising out of such products or any part of such products." The silo was "the named insured's product" under the policy, and it follows that the categories of damage listed under subparagraph B, that is, inspection and removal of the silo wreckage, are damages necessarily related to the silo. Therefore, even if these damages are considered "property damage" under the policy definition, coverage would be excluded because such damage would be considered "property damage to the named insured's products." We conclude that the district court erred in holding that the policy covered these damages.
However, the cost to remove corn from the wreckage site, awarded under subparagraph D of the jury verdict in the federal case, was not an item of damage related to property damage to the named insured's product because the corn was not Chief's product. We determine that the district court could reasonably find that the dispersal of corn on the wreckage site, which necessitated the corn's removal, falls within the policy's definition of "property damage" either as "physical injury" to the corn or as "loss of use" of the corn. Therefore, the district court did not err in concluding that the policy issued by Great Northern covered the costs of $29,871 awarded under subparagraph *386 D for removal of corn from the wreckage site.
Great Northern does not dispute the district court's decision that damages of $4,500 under subparagraph C of the jury award in the federal case for damage to an outbuilding and damages of $10,136 awarded under subparagraph D for increased rail contract penalties were covered under the policy and, therefore, these amounts were properly included in the district court's award. As discussed above, we also conclude that the district court did not err in concluding that there was coverage for the costs of $29,871 awarded under subparagraph D for the removal of corn. The awards for $4,500, $10,136, and $29,871 were properly ordered, and we therefore affirm the district court's award related to these three items of damage, but reverse the district court's decision that the remaining damages awarded under subparagraph B discussed above were covered under the policy. The award is, therefore, ordered reduced to $44,507.

VI. CONCLUSION
We conclude that the district court did not err in concluding that the foreign suits only amendment excused Great Northern of its duty to defend Chief once ARASCO brought suit in the United States and its further conclusion that the amendment did not excuse Great Northern of its duty to indemnify Chief for losses otherwise covered under the policy. We also conclude that the district court did not err in finding that the policy excluded coverage for damage to components manufactured by third parties and for damage to components manufactured by Caldwell. We further conclude that the district court did not err in finding that the policy covered damages of $4,500 to the outbuilding, damages of $10,136 for the increase in rail contract penalties, and damages of $29,981 for removal of corn from the wreckage site. We therefore affirm the district court's rulings on these issues. However, we conclude that the district court erred in finding that the policy covered damages of $43,420 for inspection of the silo and associated cleanup costs. We reverse the district court's rulings in these respects. We affirm in part, and in part reverse and remand with directions to the district court to enter judgment in Chief's favor in the amount of $44,507, representing damage to the outbuilding, the increase in rail contract penalties, and the cost of removal of corn from the site.
AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.
WRIGHT, J., participating on briefs.