[No. C049036. Third Dist. Mar. 14, 2006.]

NATIONAL CASUALTY COMPANY, Plaintiff and Appellant, v. SOVEREIGN GENERAL INSURANCE SERVICES, INC., Defendant and Respondent.

**COUNSEL**

Selman Breitman, Alan B. Yuter and Rachel E. Hobbs for Plaintiff and Appellant.

Aguilar & Sebastinelli and Dominic G. Flamiano for Defendant and Respondent.

**OPINION**

**BLEASE, Acting P. J.**—This is a declaratory relief action. Plaintiff, National Casualty Company (National), appeals from a judgment in favor of Sovereign General Insurance Services, Inc. (Sovereign), National's insured under a policy of errors and omissions insurance. The policy is a claims-made policy. The policy period was August 17, 2000, to August 17, 2001.

The policy covered Sovereign for its actual or alleged negligent acts, errors or omissions, libel, slander, or invasion of privacy, provided the claim for such act(s) was made within the policy period and was brought in the United States, Puerto Rico, or Canada.

Sovereign was authorized to issue certificates of insurance by Certain Underwriters at Lloyd's London (Lloyd's) and to process claims for Lloyd's. On March 20, 2001, attorneys for Lloyd's sent a letter to Sovereign at its offices in Stockton, California, asserting that Sovereign's underwriting and claims handling activities engaged in pursuant to agreements between Lloyd's and Sovereign, had caused Lloyd's to suffer losses, and that Lloyd's intended to recover such losses from Sovereign. Sovereign submitted the claim to National. The letter was sent during the policy period and National does not dispute that the letter constituted a claim made during the policy period for the purpose of determining coverage.

The agreements between Sovereign and Lloyd's provided for mandatory arbitration in London, England, of any disputes arising out of the agreements. Slightly less than three years after Lloyd's sent Sovereign its first letter demanding payment of its losses, and two years after this declaratory relief

action was commenced, Lloyd's instituted arbitration proceedings in London against Sovereign to recover its alleged losses.

The issue on appeal is whether the claim made against Sovereign during the policy period was also "first brought" within the United States, Puerto Rico or Canada.[1] National argues the only way to "bring" a claim is to file or institute some sort of legal action and, since the legal action (the arbitration) was filed in London, the claim was not brought within the coverage territory of the policy. However, the term "claim" is defined in the policy as "a demand or assertion of a legal right seeking damages" and includes, but is not limited to, an arbitration proceeding.

We shall conclude the term "claim first brought" is ambiguous, but the reasonable interpretation of the term in light of the policy as a whole is that a claim is first "brought" at the place where it is first tendered or "made." This reading is consistent with the fact that otherwise the majority of Sovereign's business would not be covered by the insurance it purchased.

We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

National issued a "Wholesaler, Underwriting Manager and Managing General Agent Errors and Omissions" liability policy (policy) to Sovereign. Sovereign was a licensed surplus lines broker.[2] Although the policy appears to have been issued on October 17, 2000, the policy period, the provision determining period of coverage, was from August 17, 2000, to August 17, 2001.

The policy stated that coverage was "on a claims made basis. Coverage applies only to those Claims that are first made during the Policy Period and any Extended Reporting Period." Under the heading "Where and When We[3] Insure" and the subheading "Where We Insure" the policy stated: "This

---

[1] This issue was not tendered in the declaratory relief action brought by National and it was denied the admission of a document attesting to the bringing of an arbitration proceeding in London. However, no objection was made to our consideration of the issue on appeal and we will do so.

[2] "A surplus lines broker is a broker authorized to transact business with insurers that are not admitted to do business in California pursuant to Insurance Code §§ 700 *et seq.* The Insurance Code requires surplus lines brokers to keep detailed records and to ensure that carriers with which they transact business satisfy minimum financial requirements. Insurance Code §§ 1760-1780. Before placing coverage with a nonadmitted carrier, a surplus lines broker must attempt to place the coverage with an insurer admitted to do business in California. Insurance Code § 1763." (DiMugno & Glad, California Insurance Law Handbook (1997) § 4.02, p. 11.)

[3] "We" refers to National. "You" refers to Sovereign.

policy applies to a Wrongful Act[4] commit[t]ed anywhere in the world provided that the Claim is first brought in the United States of America (including its territories and possessions), Puerto Rico or Canada." Under the subheading "When We Insure" the policy states: "This policy applies when a written Claim is first made against any of You during the Policy Period or during any Extended Reporting Period."

The term "Claim" is defined by the policy to mean "a demand or assertion of a legal right seeking Damages made against any of You. A Claim includes an arbitration proceeding to which any of You is required to submit or to which any of You has submitted with Our consent."

Prior to the issuance of the policy, Sovereign submitted an application for insurance to National. In response to the question whether Sovereign had ever placed any business with an insurer domiciled outside the United States, Sovereign replied it had placed $8 million of volume with Lloyd's. The total volume Sovereign reported was $14,250,000.

Sovereign entered into several agreements with Lloyd's pursuant to which Sovereign was authorized to issue certificates of insurance and to process claims for Lloyd's. The agreements contained a territorial limitation, which provided the insureds under the policies issued by Sovereign had to be domiciled in the United States.

The agreements also contained an arbitration clause requiring that arbitration of all matters "arising under, out of or in connection with" the agreements take place in London and be conducted in accordance with the laws of England.

On March 20, 2001, attorneys for Lloyd's sent a letter to Sovereign referencing six of the agreements between Lloyd's and Sovereign, and asserting that Lloyd's had suffered loss as a result of Sovereign's breach of the agreements. The letter put Sovereign on notice of Lloyd's "intention to recover all losses arising as a result of Sovereign's actions . . . ." "Consequently," the letter continued, "you should notify your Professional Indemnity Insurer(s) immediately." The letter was sent from the office of Lloyd's attorneys in London. It was addressed to Sovereign's offices in Stockton, California.

Approximately one year later, Lloyd's attorneys sent another letter to Sovereign. The letter referenced the arbitration clause in the agreements

---

4 "Wrongful Act" is defined as "an actual or alleged [¶] 1. Negligent act, error or omission; or [¶] 2. Libel, slander or invasion of privacy, by any of You or any person or organization for whom You are legally liable in the performance of Insurance Services . . . ."

between Lloyd's and Sovereign, and demanded arbitration of the contested agreements. A few days later, attorneys for Lloyd's sent another letter demanding the sum of $5 million dollars to settle the claim. The letter was sent from the attorneys' Los Angeles office.

On May 3, 2002, National sent a letter advising Sovereign it would agree to provide a defense with respect to the Lloyd's claim, subject to a reservation of rights. In the letter, National acknowledged that the March 20, 2001, letter might constitute the foundational claim. However, National maintained that the March 20, 2001, letter also might represent a claim brought outside the territorial limits of the policy. National said it was of no import that one of the claim letters had been sent from the attorneys' Los Angeles office, because the policy provided that in the event multiple claims arose from the same wrongful act, the claim would be deemed to have been made on the date of the first written claim involving the wrongful act.[5]

National brought a complaint for declaratory relief on June 6, 2002. In the complaint, National conceded that the March 20, 2001, correspondence from Lloyd's attorneys to Sovereign in Stockton constituted the foundational claim, but alleged there was no coverage available under National's policy because the letter constituted an extraterritorial claim. The complaint alleged, "[f]urthermore, that the source of the second claim letter (dated March 29, 2002) was LeBoeuf Lamb's [Lloyd's attorneys] Los Angeles office has no import. The policy provides in pertinent part that 'All Claims arising from the same Wrongful Act or Interrelated Wrongful Acts will be deemed to have been made on the earlier of the following dates: (1) The date the first of those written Claims involving the same Wrongful Act or a Wrongful Act in a series of Interrelated Wrongful Acts is first made against any of You . . . .' Thus, the March 29, 2002 letter involves the same 'wrongful act' or 'wrongful act' in a series of 'interrelated wrongful acts,' that was referenced in the March 20, 2001 claim letter."

National took the position in its reservation of rights letter and complaint that the claim was brought outside the United States because it was contained in a letter sent from London. However, it argued at trial that the phrase "provided that the claim is first brought in the U.S.A." has a special meaning in the insurance industry. It argued the phrase means that a legal proceeding must be initiated within the specified territory. The trial court disagreed.

---

[5] National also argued the policy did not apply to claims arising out of insurance services for which Sovereign was acting as managing general agent or underwriting manager. National claimed Sovereign might have been acting as a managing general agent. The claim was asserted in National's complaint for declaratory relief and was litigated at trial. The trial court found Sovereign was not a managing general agent. This issue is not raised on appeal.

Following the trial court's decision, National moved for a new trial. The trial court denied the motion for new trial and entered judgment in favor of Sovereign. This appeal followed.

## DISCUSSION

National does not dispute that the claim was made when Lloyd's sent the March 20, 2001, letter to Sovereign at its offices in Stockton, California, during the policy period. National also has apparently abandoned the argument set forth in its reservation of rights letter and complaint that the claim was "brought" outside the United States because the March 20, 2001, letter from Lloyd's attorneys was sent from London. The only argument it makes on appeal is that "claim first brought," contained in the "Where We Insure" provision of the policy, refers to the filing of a formal legal action, and since the arbitration in this matter was commenced in London, the claim was first brought outside the United States.[6]

Insurance policies are contracts to which the ordinary rules of contract interpretation apply. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545].) The issue of interpretation of an insurance policy is a question of law that is reviewed de novo. (*E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 470 [9 Cal.Rptr.3d 701, 84 P.3d 385].)

" ' "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." [Citation.] "Such intent is to be inferred, if possible, solely from the written provisions of the contract." [Citation.] "If contractual language is clear and explicit, it governs." [Citation.]' [Citation.] [¶] ' "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." [Citations.] The fact that a term is not defined in the policies does not make it ambiguous. [Citations.] Nor does "[d]isagreement concerning the meaning of a phrase," or " 'the fact that a word or phrase isolated from its context is susceptible of more than one meaning.' " [Citation.] " '[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.' " [Citation.] "If an asserted ambiguity is not eliminated by the language and context of the policy, courts then invoke the principle that ambiguities are generally construed against the party who

---

[6] National also argues the trial court's reasons for concluding the claim was filed in the United States were incorrect. However, it is well settled that "a judgment correct in law will not be reversed merely because given for the wrong reason; we review the trial court's judgment, not its reasoning." (*Mayer v. C.W. Driver* (2002) 98 Cal.App.4th 48, 64 [120 Cal.Rptr.2d 535].)

caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage." [Citation.]' [Citation.]" (*Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390–391 [33 Cal.Rptr.3d 562].)

We shall determine that the interpretation National urges is not a reasonable one, and that the judgment should be affirmed.

### A. *The Purpose of the Territorial Limitation Is Unclear*

National concedes the "When We Insure" provisions of its policy were met. The policy applied when a claim, which the policy defined as a demand or assertion of a legal right (including an arbitration proceeding) seeking damages against Sovereign, was first made during the policy period. The policy stated that a claim was "first made" when it was first received by Sovereign.[7] The policy period was from August 17, 2000, to August 17, 2001. Thus, the claim was first "made" when Sovereign received the March 20, 2001, letter from Lloyd's attorneys at its offices in Stockton, California.

National argues, however, that a claim is not "brought" at the same time it is "made." It asserts there is only one reasonable interpretation of when a claim is first "brought," and that is when a lawsuit or other formal legal proceeding is first initiated against the insured. National argues the only claim that was "brought" in this case was the arbitration proceeding that was initiated in London, outside the territorial limitations of the policy.

Citing 8 Couch on Insurance (3d ed. 1997) section 119:78, page 119-114, National claims the purpose of the territorial condition "is to prevent insurers from having to contend with lawsuits initiated in countries 'in which both the legal systems and social norms that they influence may be drastically different than in the location where the policy was written.' " However, this section of Couch on Insurance does not deal with the type of policy at issue here, but with the geographic restrictions on the place a covered event occurs that are found in automobile liability insurance policies. The entire quote states: "One obvious reason for this is that the risks of operating a motor vehicle, whether the coverage be liability, theft, or collision, can vary significantly from one location to another. This is particularly true in terms of foreign countries in which both the legal systems and the social norms that they influence may be drastically different than in the location where the policy was written." (8 Couch on Insurance, *supra*, § 119:78, pp. 119-114, 119-115.)

---

[7] The policy provides that "A claim is first made against any of You when a written Claim is first received by any of you."

The reasons for including a territorial or geographic limitation on the operation of an automobile in an automobile liability policy are not necessarily the same as the reasons for the territorial limitation in the errors and omissions policy before us. In the former, the insurer is attempting to limit coverage because the risk insured (operating the vehicle) is less discernible in a foreign country. In this case, the risk insured (a wrongful act committed by Sovereign) does not vary from place to place. Even if it did, the policy expressly covers a wrongful act committed anywhere in the world.

National does not tell us what the mutual intent of the parties or even what its own unilateral intent was in limiting coverage to claims first brought in the United States, Puerto Rico, or Canada, and the accepted reasons for including a territorial limitation clause in an automobile liability policy are not present here. Moreover, the facts of this case make it particularly difficult to believe that the parties intended "claim first brought" to mean the filing of a formal legal action. The majority of Sovereign's business was contracted through Lloyd's and Sovereign's agreement with Lloyd's contained an arbitration clause mandating that all disputes be arbitrated in London. It would have been wholly unreasonable for Sovereign to pay for a policy that failed to cover the majority of its business ($8 million out of $14 million dollars).

## B. *The Phrase "Claim First Brought" Is Ambiguous*

National points to the definition of "claim" as set forth in the policy, emphasizing that it includes both written demands and formal legal actions such as arbitrations. Citing language from *Employers Reinsurance Corp. v. Phoenix Ins. Co.* (1986) 186 Cal.App.3d 545 [230 Cal.Rptr. 792] (*Employers*), National argues the only reasonable interpretation of the term "claim" in the context of the territorial condition is a formal legal proceeding against the insured. National points to the distinction *Employers* made between claims "made" and suits "brought" to support its argument that the "bringing" of a claim requires the filing of a formal legal action.

However, the definition of "claim" in the policy is not limited to a legal proceeding. It applies both to the claims made and claims brought provisions of the policy. It does not use terms exclusively applying to the institution of a legal proceeding. It applies to any "demand or assertion" of a legal right, plainly including matters broader than the institution of a legal proceeding, consistent with its application to both the claims first made and claims first brought provisions.

In *Employers*, the pertinent policy language was contained in an attorney's professional liability policy that provided coverage " 'if [a] claim is made or suit is brought against the insured during the policy period . . . .' " (*Employers,*

*supra,* 186 Cal.App.3d at pp. 550–551.) The court had to determine whether the policy provided coverage where a lawsuit was filed within the policy period, but the insured did not receive notice of the lawsuit until after the expiration of the policy period. (*Id.* at pp. 549, 554.) The insurer argued the term "suit brought" meant not only the filing of a lawsuit, but also the receipt of notice of the lawsuit. (*Id.* at p. 554.) The insurer relied on *Hoyt v. St. Paul Fire and Marine Ins. Co.* (9th Cir. 1979) 607 F.2d 864 (*Hoyt*), in which the court held that a letter requesting information was not a "claim" for purposes of a "claims made" professional liability policy. (*Employers, supra,* 186 Cal.App.3d at p. 555.) *Hoyt* said that a "claim" as contemplated by the policy was something in the nature of a demand or notice. (*Employers,* at p. 555.)

*Employers* refuted the insurer's argument that the bringing of a suit necessarily signified the receipt of summons or other process. (*Employers, supra,* 186 Cal.App.3d at p. 555.) It was in this context that the court stated: "By use of the disjunctive 'or' it is apparent that the terms 'claim is made' and 'suit is brought' are not one and the same. Furthermore, if Phoenix had intended for the term 'suit is brought' to mean both the filing of a lawsuit and receipt of notice, it could have so specified in the policy. In addition, there is an inherent difference between the 'making' of a claim and the 'bringing' of a lawsuit. The former, by its very nature, involves some kind of notice. The latter only requires the filing of a complaint." (*Ibid.*)

*Employers* has no bearing on the meaning of the "bringing" of a claim. While the "bringing" of a lawsuit is understood to mean the filing of a lawsuit, the same cannot be said for the "bringing" of a claim. A claim, as defined by the policy itself, does not necessarily involve any formal legal action. If National had intended its coverage to extend only where legal action was filed in the United States or Canada, the policy would have used the word "suit" or "formal legal action." It did not.

National also cites *Chief Industries v. Great Northern Ins. Co.* (2004) 268 Neb. 450 [683 N.W.2d 374] (*Chief Industries*), a Nebraska case interpreting a policy provision relating not to coverage, but to the duty to defend. There, the policy stated in relevant part: " 'This insurance applies anywhere in the world, except the United States of America, its territories and possessions, Puerto Rico and Canada. The settlement, investigation and defense provisions of this contract shall only apply to claims made or suits brought within the policy territory herein defined.' " (*Id.* at p. 454.) The insured in that case, Chief Industries, argued the duty to defend provision of the policy became relevant where either a claim was made or a suit was brought. (*Id.* at p. 459.) Since the claim was first made within the policy territory, Chief Industries argued it was irrelevant to the duty to defend that a suit was subsequently filed outside the policy territory. (*Ibid.*) The court rejected this argument because it found "the

defense obligation that Great Northern sought to avoid through the policy language . . . was the defense of a suit outside the policy territory . . . ." (*Ibid.*)

The language and intent of the National policy is not so clear. Unlike the policy provision in *Chief Industries*, the language at issue is not contained in a duty to defend provision, but is contained in the coverage provision of the policy. While it would be reasonable for an insurer to limit the contractual duty to defend to a particular territory, it is not so reasonable to interpret the "claim first brought" language to limit coverage to a particular territory, especially in light of the fact that the policy claims to cover a "wrongful act committed anywhere in the world . . . ."

As noted, the term coupled with the word "brought" in this policy is "claim," unlike the policy in *Chief Industries,* which used the phrase "suits brought." (*Chief Industries, supra,* 268 Neb. at p. 458.) It is generally accepted that a suit is brought whenever it is filed in court. (*Employers, supra,* 186 Cal.App.3d at p. 555.) On the other hand, a "claim," as defined by the policy, does not necessarily involve any formal legal action, and may consist merely of a written demand for damages. The "bringing" of a claim, contrary to National's assertion, does not necessarily imply the formal institution of a legal action because the term "claim" does not necessarily involve a formal legal action.

The use of the phrase "claim first brought" presents an ambiguity because the term "brought" is often used in conjunction with the word "suit" to mean the filing of an action, but is used here with the term "claim" which includes matters other than the filing of a lawsuit. Because a claim is not necessarily a formal legal action, the "bringing" of a claim has no special association with the filing of an action. Moreover, the policy defines when a claim is first made (whenever received), but does not define when a claim is first brought, nor is it clear whether the parties intended the "bringing" of a claim to mean something different from the "making" of a claim.

### C. The "Making" and "Bringing" of the Claim Refer to the Same Event

When the language of the policy is ambiguous, we must consider the language in the context of the policy as a whole and the circumstances of the case. (*Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 868 [77 Cal.Rptr.2d 107, 959 P.2d 265].) Here, consistent with the application of the term "claim" to both the claims made and claims brought provisions of the policy, is the use of the modifier "first." Thus, the place where the claim was "first made" is also the place where the claim was "first brought."

Under the circumstances presented here, it would have been objectively unreasonable for the parties to have intended that coverage would be dependent on two separately occurring events: a demand for damages occurring during a certain time period, and a legal action to recover damages occurring within a certain territory. Difficulties in implementing such a provision would inevitably occur where, as here, the legal action was not filed immediately, but was delayed several years.[8] Would the determination of coverage of the claim be delayed until the injured party filed a formal legal action, or would the claim be covered as long as no formal legal action was filed, then become a noncovered claim the minute some formal proceeding was taken outside the territorial limits of the policy? Either of these scenarios is unworkable.

Taking into account the ambiguity of the policy language, we conclude the parties must have intended that the determination of coverage would be made at a single point in time, and that point in time was when the injured party first brought to Sovereign's attention that a claim for damages was being asserted. That was the point in time for the determination to be made that the claim was brought within the policy period and the policy territory. As no formal legal proceeding had been "brought" when the claim against Sovereign was "made," the filing of the arbitration in London is irrelevant to a determination of where the claim was brought in this case.

Although National does not renew on appeal its argument that the claim was "brought" in London because the letter making Lloyd's claim was mailed from there, we consider and dismiss this possible interpretation as well. The claim in this case was a letter demanding damages sent from London, England to Stockton, California. Unlike a formal legal proceeding that is initiated the moment it is filed in accordance with procedural requirements, a written claim contained in a letter is nothing until it is received.

As stated in *Employers, supra,* 186 Cal.App.3d at page 555, the making of a claim, "by its very nature, involves some kind of notice." The sending of the claim is an uncompleted act. It is nothing more than an unconveyed wish until it is received. A completed claim cannot be said to have been made or brought until it is received. We look to the completed act to determine both where and when the claim was brought. In this case, the claim was brought in California.

---

[8] National claims Lloyd's filed the equivalent of the complaint in the arbitration proceeding in 2004. The trial court sustained Sovereign's objection to the admission of the document. The document is included in the appellant's appendix, and indicates it was served on January 30, 2004.

## DISPOSITION

The judgment is affirmed.

Cantil-Sakauye, J., concurred.

**HULL, J.,** Concurring.—I concur in the result. I write separately to make an observation or two regarding the majority opinion.

First, the majority opinion can be read to suggest that valid territorial clauses are limited to automobile liability policies. I find no such restriction. Indeed, it would be entirely understandable for an insurance company to want to limit the coverage of its policy to actions prosecuted only in particular jurisdictions and not want to obligate itself to the defense of claims in foreign jurisdictions having different laws and different legal systems. There is no reason why an unambiguous clause limiting coverage in that manner should not, as a matter of contract, be enforceable.

Second, the majority opinion sees support for its holding in the thought that, since the "majority of Sovereign's business was contracted through Lloyd's and Sovereign's agreement with Lloyd's contained an arbitration clause mandating that all disputes be arbitrated in London" (maj. opn., *ante*, at p. 820), it would have been unreasonable for Sovereign to buy a policy that did not cover a majority of its business. But there is no evidence in this record that National Casualty knew of the arbitration provision at or before the time the parties entered into the insurance contract. If the policy had been unambiguous concerning the meaning of the territorial clause, there would be no reason to lay at National Casualty's feet the fact that Sovereign would have purchased insurance that perhaps did not cover a majority of its business.

There is weight to National Casualty's argument that the terms "claims made" and "claims brought" logically must refer to two different events. This was a "claims made" policy and its coverage depended on a claim being made against the insured within the time period covered by the policy. Separately, a claim had to be "brought" within the geographical coverage of the policy. Since demand letters are common before formal litigation commences, reading the policy to say that a claim is "brought" with regard to the territorial clause when a demand letter is received in the United States, as a practical matter, reads the territorial clause out of the policy.

Even so, I concur in the result because both phrases use the word "claim" and "claim" is identified in the policy as " 'a demand or assertion of a legal right seeking Damages made against any of You.' " (Maj. opn., *ante*, at

p. 816.) The letter received by Sovereign in Stockton, California can reasonably be construed as a demand or assertion of a legal right brought in Stockton seeking damages. The common use of the word "claim" in the phrases "claims made" and "claims brought" introduces an ambiguity that must be held against National Casualty and in favor of coverage. (*Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377 [33 Cal.Rptr.3d 562].)

Appellant's petition for review by the Supreme Court was denied May 24, 2006, S142601.