ON MOTIONS FOR REHEARING AND CLARIFICATION
POLEN, J.
We deny appellant’s motion for rehearing, but grant the parties’ motions for clarification in part. Accordingly, we withdraw our opinion of March 30, 2005, and substitute the following opinion.
This appeal arises from a final order granting summary judgment to appellee, Essex Insurance Co. (“Essex”), finding that Essex has no duty to defend appellant, Rad Source Technologies (“Rad Source”), under a “Motor Truck Cargo Liability Policy.” We hold that the pertinent language of the policy is ambiguous concerning Essex’s duty to defend and therefore resolve the ambiguity against Essex. See Int’l Surplus Lines Ins. Co. v. Markham, 580 So.2d 251, 253 (Fla. 2d DCA 1991). Accordingly, the judgment of the trial court is reversed.
Rad Source purchased a “Motor Truck Cargo Liability Policy” from Essex for the period of November 2, 2000 through November 2, 2001. The section of the policy titled “Declarations” states:
*265 1. This policy covers the liability of the insured (except as provided elsewhere in the policy) for loss or damage to lawful goods and merchandise consisting principally of irradiation units caused directly by the perils hereinafter specified while in the custody or control of the insured (and while in the custody of connecting carriers) in ordinary course of transit including loading and unloading throughout: USA and Canada.
Rad Source was sued in the Circuit Court of Cook County, Illinois, by the Board of Trustees of the University of Illinois, the purchaser of an irradiator unit that arrived at the university in September 2001 and was apparently damaged in transit. Rad Source filed a complaint for declaratory relief in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida, requesting the trial court to issue a declaration that Essex has a duty to defend and a duty to indemnify Rad Source, with respect to the University of Illinois’s claim. Rad Source moved for partial summary judgment on the issue of whether Essex owes Rad Source a defense and Essex cross-moved for summary judgment, “seeking a declaration that the insurance policy does not obligate Essex to provide a defense to [Rad Source] in any action.” (Emphasis added.)
The trial court granted final summary judgment to Essex, finding that Essex has no duty to defend Rad Source under its policy relying upon the case PT Indonesia Epson Industry v. Orient Overseas Container Line, Inc., 2002 WL 561376 (S.D.Fla. Apr.ll, 2002) (not reported in F.Supp.2d).
Rad Source argues on appeal that the trial court erred in finding that Essex is not required to defend Rad Source against the University of Illinois’s claim. Because the order on appeal interprets an insurance policy, the trial court’s decision was based upon a pure question of law and we review’ the issue de novo. Allstate Ins. Co. v. Rush, 777 So.2d 1027 (Fla. 4th DCA 2000).
The duty to defend can exist only by statute or contract. Allstate Ins. Co. v. RJT Enters., Inc., 692 So.2d 142, 144 (Fla.1997). It is also well settled law in Florida that an insurer’s duty to defend is more extensive than its duty to indemnify. Klaesen Bros., Inc. v. Harbor Ins. Co., 410 So.2d 611, 612-13 (Fla. 4th DCA 1982). Moreover, “[a]ny doubt as to whether the policy provides a duty to defend should be resolved against [the insurer].” Int’l Surplus Lines Ins. Co., 580 So.2d at 253. The issue on appeal surrounds the meaning of paragraph 15 of the insurance policy, which states:
15. Admission . of Liability. The insured shall ■ not voluntarily admit any liability nor settle any claims nor incur any expense (except as provided for in paragraph 10 of the Policy conditions) without the specific, authority of the Company, nor shall they interfere with any negotiations for settlements carried on between this Company and the owners of the property. In event of legal action being brought against the Insured in respect to alleged loss or damage which might constitute a claim under this Policy, the Insured shah give immediate notice to the Company, and this Company reserves the right as its sole option to defend such action in the name of and on behalf of the Insured and will pay all legal expenses incurred by this Company in connection with any action it undertakes to defend, also any judgment against the Insured subject, however, to all the valuations and limitations provided for herein.
*266 (Emphasis added.) More specifically, our decision rests on the interpretation of the phrase “as its [Essex’s] sole option.”
Rad Source argues that PT Indonesia, the case the trial court relied upon in ruling for Essex, is' inapposite. 2002 WL 561376. In that case, the Southern District of Florida granted partial summary judgment in favor of a motor truck cargo insurer where the policy expressly stated that the insurer reserved the right “at its sole option” to defend the claim on behalf of its insured. Id. at *1. The court held that under the plain meaning of the policy the insurer had the option not to provide a defense for an action against its insured.[1] Id. at *2. The provision under review in PT Indonesia was different than the policy in the instant case because the PT Indonesia clause used the word “at” where the Essex’s clause says “as.” Rad Source argues that the substitution of the word “at” with “as” radically changes the meaning of the provision. It contends that when the company reserves a right at its sole option, the language could mean only that the company has the option to defend or not. However, in this ease the Essex policy uses the term as its sole option, which Rad Source asserts means that defending is the sole option available to Essex for a matter, “which might constitute a claim under this Policy.”
Alternatively, Rad Source argues that Essex’s contractual duty is ambiguous and therefore must be construed against the insurer and in favor of the insured. See Gulf Life Ins. Co. v. Nash, 97 So.2d 4 (Fla.1957). Rad Source argues that Essex seeks to torture the language in its own policy to its benefit. - It asserts that the provision stating that it “reserves the right as its sole option to defend such action” could be interpreted to mean that Essex’s only option with respect to such a claim is to defend it. Rad Source also contends that the policy language “it undertakes to defend” could refer to claims against the insured which Essex could decline to defend based on the belief that they do not constitute claims under the policy. The disputed language could' also be interpreted to mean that it is Essex’s only option to defend and it reserves that right, thereby prohibiting the insured from seeking alternative courses of defense.
Essex, on the other hand, contends that no duty exists in this case because its insurance policy gives Essex the option to defend but not the obligation to provide a defense. It concludes that since it has not elected to provide a defense in this case, the trial court correctly granted final summary judgment in its favor. It argues that the difference in the language of the clauses between this case and PT Indonesia is “a distinction without difference.” It asserts that the clause found in paragraph 15 cannot be interpreted to create a duty to defend without ignoring the clear and unambiguous language of the policy. Essex also argues that if the court construes the clause in any other way besides its own interpretation, there would allegedly be no instances where .the insurer would be able to decline to provide a defense. It contends that such result would undercut the clause “in any action it undertakes to defend.” However, as discussed above, Rad Source maintains that this clause can be interpreted to refer to claims against the insured that Essex could decline to defend on the basis that they do not constitute *267 claims under the policy.[2]
The argument put forth by Rad Source in this contract interpretation dispute is more logical and consonant with reason. The use of the term “as” affects the meaning of the relevant clause, “as its sole option.”[3] We therefore do not agree with the trial court that the language of Paragraph 15 unambiguously means that Essex has no duty to defend any claim that might be brought against Rad Source that is arguably covered under the policy. We hold that this policy is ambiguous with respect to Essex’s duty to defend and, therefore we resolve the ambiguity against the insurer. Int’l Surplus Lines, 580 So.2d at 253. Because a duty to defend could exist under Essex’s policy, we reverse the trial court’s entry of summary judgment in favor of Essex. We hereby remand this case to the trial court to consider whether the allegations of the complaint filed by the University of Illinois fall within the terms of the coverage of the insurance policy, in order to determine whether Essex has a duty to defend Rad Source in this case. Because the issue of Essex’s duty of indemnification, if any, is not before us, we voice no opinion as to that matter.

Reversed.

WARNER and HAZOURI, JJ., concur.

. "The rules of stare decisis do not require this court to follow federal court decisions that construe Florida's substantive law." Bridges v. Williamson, 449 So.2d 400, 401 (Fla. 2d DCA 1984) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Nonetheless, we find PT Indonesia distinguishable as explained above.

. Essex further contends that it would be improper to require it to pay for the defense of the complaint against Rad Source because Essex allegedly did not bargain to bear those costs under the policy. See Colony Ins. Co. v. G & E Tires & Serv., Inc., 777 So.2d 1034, 1038 (Fla. 1st DCA 2000)("With regard to defense costs for these [potentially covered] claims, the insurer has been paid premiums by the insured. It bargained to bear these costs.”). This is a factual argument which should be addressed in the first instance by the trial court.

. The relevant clause in this case is different from that in PT Indonesia, and therefore this opinion should not be construed as conflicting with Judge Jordan’s opinion in that case.