913 So.2d 673 (2005)
EAST FLORIDA HAULING, INC., Appellant,
v.
LEXINGTON INSURANCE COMPANY, Appellee.
No. 3D05-376.
District Court of Appeal of Florida, Third District.
September 21, 2005.
Rehearing Denied November 8, 2005.
*674 Richard B. Austin, for appellant.
De Orchis, Hillenbrand & Wiener, LLP and Hyman Hillenbrand, Miami, for appellee.
Before WELLS, SUAREZ, and CORTIÑAS, JJ.
CORTIÑAS, Judge.
The plaintiff, East Florida Hauling, Inc. ("EFH") appeals from a final order granting the defendant's, Lexington Insurance Company's ("Lexington"), motion for summary judgment finding that Lexington owed no duty to defend and that Lexington's liability, if any, is limited by the "limitation on certain commodities" clause ("target commodities endorsement"). We affirm.
EFH is in the business of transporting trailers throughout the United States. Under applicable federal law, EFH is required by the Federal Motor Carrier Safety Administration to maintain commercial auto liability and cargo liability insurance coverage for the protection of both the public and the owner of the cargo entrusted to EFH for transportation. EFH was covered by a motor truck cargo liability insurance policy ("policy"), which was written by Lexington. Subject to limitations, that policy assumed EFH's legal liability for the property of others under EFH's bill of lading while the property was in transit and in the custody of EFH.
On October 5, 2002, a sealed trailer was stolen from EFH's possession near Tallahassee, Florida, while the trailer was enroute *675 from Miami, Florida to Laredo, Texas. The stolen cargo belonged to Robinson Company, Inc. ("Robinson"). On October 21, 2002, EFH made a claim to Lexington under its motor cargo insurance policy for the theft of the cargo. At that time, Lexington began investigating the claim.
In April 2004, Robinson sued EFH for breach of contract for non-delivery, seeking over $300,000 for the value of the cargo contents and alleging that the cargo contained "electronic goods" ("main lawsuit"). EFH promptly forwarded the main lawsuit to Lexington asserting that Robinson's allegations fell within the coverage provisions and demanding that Lexington defend the suit. On April 7, 2004, Lexington notified EFH that it declined to defend EFH and that its maximum exposure under the policy was $20,000[1] because the policy contained a clause setting forth a target commodities endorsement which stated, in relevant part:
H. LIMITATION ON CERTAIN COMMODITIES
In the event of "loss" by theft of the following commodities from a vehicle, we will not be liable for more than 10% of the Limit of Insurance applying to that vehicle:
a. Audio and Video Equipment.
Lexington further noted that, since EFH's bill of lading provided for a 50 cents per pound limitation, the limit of liability would be $16,220 as the cargo weighed 32,440 pounds. Therefore, Lexington offered EFH a settlement of $16,220 minus $5,000 deductible for a net amount of $11,220. However, prior to offering to settle with EFH for $11,220, Lexington offered to resolve the claim with Robinson for $25,000, but Robinson refused.
Lexington's refusal to defend EFH was based on the "Commercial Inland Marine Conditions" section of the policy which stated, in relevant part:
H. PRIVILEGE TO ADJUST WITH OWNER
In the event of "loss" involving property of others in your care, custody, or control, we have the right to:
1. Settle the "loss" with the owners of the property. A receipt for payment from the owners of that property will satisfy any claim of yours.
2. Provide a defense for legal proceedings brought against you. If provided, the expense of this defense will be at our cost and will not reduce the applicable Limit of Insurance under this insurance. (emphasis added).
On July 1, 2004, EFH filed a Third Party Complaint against Lexington, seeking declaratory relief and alleging that Lexington breached its contract with EFH when it failed to: 1) defend EFH; 2) investigate and resolve the subject claim directly with Robinson; 3) apply the correct principles of contract interpretation to the target commodities endorsement; 4) fulfill its obligation to EFH; and 5) act in good faith. EFH also sought indemnity for its costs to defend and investigate claims under the main lawsuit.
On October 15, 2004, Lexington filed a motion for summary judgment, attaching the affidavit of Mamie S. Landers ("Landers"), Lexington's claims professional. The motion and affidavit were supported by three commercial invoices submitted by Robinson to EFH. Based on the invoices, *676 Landers concluded that the contents contained in the cargo constituted audio and video equipment. This classification reduced Lexington's coverage to ten percent (10%) of the policy limit.
In response to Lexington's motion, EFH filed the affidavit of Robert Acuna, president of EFH, admitting his knowledge of the target commodities endorsement in the policy since it had been the subject of Lexington's prior reservation of rights letters. Acuna stated that, over the course of several years that Lexington provided cargo insurance to EFH, Lexington defended over five cargo claims filed against EFH similar to the instant claim. Lexington had never declined to defend EFH, although it had issued reservation of rights letters. Acuna also asserted that he was never advised that the duty to defend clause was exercised solely at the discretion of Lexington nor was he advised of any standards, rules, or guidelines by which the duty to defend was either exercised or refused.
On January 6, 2005, the trial court granted Lexington's motion for summary judgment and dismissed EFH's Third-Party Complaint. The trial court found that Lexington had "no duty to defend EFH in the main lawsuit and that Lexington's liability, if any, is limited to a net amount of $20,000, 10% of $250,000 = $25,000, less the $5,000 deductible...."
We review the trial court's interpretation of an insurance policy and entry of summary judgment de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126 (Fla.2000); Siegle v. Progressive Consumers Ins. Co., 788 So.2d 355, 357 (Fla. 4th DCA 2001) aff'd, 819 So.2d 732 (Fla.2002). When granting a motion for summary judgment, the trial court must determine that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Volusia, 760 So.2d at 130. The moving party bears the burden of conclusively demonstrating the absence of triable issues. Moore v. Morris, 475 So.2d 666, 668 (Fla.1985). In reviewing a summary judgment, this court views the evidence in a light most favorable to the nonmoving party, drawing all reasonable inferences derivable from the evidence in favor of the nonmoving party. See Cox v. CSX Intermodal, Inc., 732 So.2d 1092, 1095 (Fla. 1st DCA 1999).
The first issue on appeal is whether the lower court properly determined that Lexington's insurance policy created a right rather than a duty to defend EFH. Either a statute or a contract may confer on the insurer a duty to defend. Allstate Ins. Co. v. RJT Enters., Inc., 692 So.2d 142, 144 (Fla.1997). Since there is no applicable statute, this court must examine the policy language to determine whether the trial court erred in granting summary judgment in favor of Lexington. When the language of an insurance policy is clear and unambiguous, a court must interpret it according to its plain meaning, giving effect to the policy as it was written. See Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 165 (Fla.2003). However, if the language of the policy is susceptible to more than one reasonable interpretation, it is ambiguous, and a court will resolve such ambiguity in favor of the insured. Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla.2000).
EFH argues that the policy language regarding Lexington's right to defend creates doubt as to whether there is an obligation, rather than an option to defend, and that such doubt must be resolved in favor of EFH. It further argues that Lexington's fiduciary obligation to its insured forbids it from exercising an option, at its unilateral discretion, to refuse *677 to defend its insured when the claim clearly falls within the policy's coverage provisions.
Lexington, on the other hand, contends that the insurer does not have an absolute duty to defend in every instance where a claim falls under the coverage provisions. Lexington further contends that the nature and scope of the duty to defend is created in the insurance contract, which may relieve the insurer of any obligation to defend. "Since the contract terms govern the duty, an insurance policy may relieve the insurer of any duty to defend, or give the insurer the right, but not the duty, to defend." 14 Lee R. Russ & Thomas F. Segalia, Couch on Insurance 3D § 200:5 (1999). Lexington also contends that the clause at issue, "Section H, Privilege to Adjust with Owner," is clear and unambiguous. It claims that the clause creates a right, rather than a duty to defend, as made clear by the language "if [defense is] provided," thus confirming the discretionary nature of the subject section of the policy. We agree.
EFH relies on Rad Source Techs. Inc. v. Essex Ins. Co., 902 So.2d 264, 267 (Fla. 4th DCA 2005), to illustrate that, when policy language is determined to be ambiguous, such an ambiguity will be resolved in favor of the insured. However, the provision in question in Rad Source involved policy language which is distinguishable from the instant case. In Rad Source, the policy provided that "[t]his Company reserves the right as its sole option to defend ... and will pay all legal expense incurred by this Company in connection with any action it undertakes to defend...." Id. at 265 (emphasis added). The Fourth District found that language to be ambiguous because the provision could be reasonably interpreted in at least three different ways: (1) "as its sole option" could mean that the insurer's only option is to defend; (2) "it undertakes to defend" could refer to claims that the insurer could refuse to defend on the basis that the claims are not covered under the policy; or (3) the language could also mean that the insurer is reserving the right to defend to prohibit the insured from independently proceeding with its defense. Id. at 266-67. The policy language in our case is clearly different from the language in Rad Source and does not lend itself to more than one reasonable interpretation.
Although Florida courts have not interpreted the specific clause at issue in the instant case, Florida law has recognized that an insurance policy may relieve the insurer of an obligation to defend its insured by reserving a right, at the insurer's discretion, to defend an action. See PT Indonesia Epson Indus. v. Orient Overseas Container Line Inc., No. 99CV3373, 2002 WL 561376, at *3 (S.D.Fla.2002). PT Indonesia involved an insurance provision which stated, in relevant part:
The insured shall not voluntarily admit any liability nor settle any claims ... without the specific authority of this [c]ompany, nor shall they interfere with any negotiations for settlements.... In the event of legal action brought against the insured ... which might constitute a claim under this policy, the insured shall give immediate notice ... and this [c]ompany reserves the right at its sole option to defend such action.

Id. at *1 (emphasis added). The court concluded that the unambiguous language of the policy plainly meant that the insurer had the option not to provide a defense. Id. at *2. Thus, even when the insured agrees to relinquish control of the investigation to the insurer, the insurer may exercise the right to refuse to defend the insured.
Moreover, case law from other jurisdictions guides this court in its construction *678 of the policy provision in the instant case. A state court in Nebraska and a federal court in Illinois addressed the exact same insurance provision at issue. Both courts were in agreement that where policy language creates a right to defend, it is clear and unambiguous that it does not create a duty on the part of the insurer. Centennial Ins. Co. v. Transitall Servs., Inc., No. 00C1383, 2001 WL 289879, at *3 (N.D.Ill. 2001); Ohio Cas. Ins. v. Carman Cartage Co., Inc., 262 Neb. 930, 636 N.W.2d 862, 867 (2001).
The court in Centennial held that, even when the complaint in the underlying lawsuit alleges facts within the coverage of the policy, if the policy confers on the insurer only a right to defend, the insurer is not obligated to defend the insured. Centennial, 2001 WL 289879, at *3. It further held that the permissive language of the policy does not render the policy meaningless because the insurer is obligated, under a different provision, to pay for any loss covered under the policy. Id. In the instant case, even if it elects to refuse to defend EFH, Lexington will have to pay for any loss covered under the policy when liability is determined, because the duty to defend is separate from the coverage provisions of the policy. See Colony Ins. Co. v. G & E Tires & Serv., Inc., 777 So.2d 1034, 1036 (Fla. 1st DCA 2000).
Similarly, the Carman court concluded that the "Privilege to Adjust with Owner" provision at issue in that case, which contained the same language as the provision in the instant case, "clearly and unambiguously gives [the insurer] a right to defend claims against its insured and a right to settle such claims, but does not impose a duty upon it to do either." Carman, 636 N.W.2d at 867. EFH's attempt to cast Carman as inapplicable because the insurance contract involved in Carman was an inland marine policy providing for motortruck cargo coverage, rather than liability, is a distinction without a difference.
The second issue on appeal is whether the target commodities endorsement restriction applies to the goods that were contained in the stolen cargo. The burden is on the insured to prove that the insurance policy covers a claim against it. Hudson Ins. Co. v. Double D Mgmt. Co., Inc., 768 F.Supp. 1542 (M.D.Fla.1991). Once the insured shows coverage, the burden shifts to the insurer to prove an exclusion applies to the coverage. LaFarge Corp. v. Travelers Indem. Co., 118 F.3d 1511, 1516 (11th Cir.1997). If there is an exception to the exclusion, the burden once again is placed on the insured to demonstrate the exception to the exclusion. Id.
Here, Lexington submitted Landers' affidavit, as well as three commercial invoices provided to EFH by Robinson and subsequently forwarded to Lexington as support for EFH's claim. The invoices reflected that the cargo contained such items as "Sharp ... Viewcam, 16X Zoom,... JVH SVHS-C Camera w/ ... LCD-Light-Stabilizer,... Panasonic VHS-C Camcorder." The relevant policy provision clearly and unambiguously reduced coverage for "Audio and Video Equipment," and the items listed on the invoices squarely fall within this provision. EFH failed to present evidence demonstrating that there is a genuine issue of material fact as to whether an exception to the exclusion exists, or to dispute that it was transporting these items. Therefore, we find that the target commodities endorsement is clear and unambiguous and must be construed according to its plain meaning.
Affirmed.
NOTES
[1] This amount represents ten percent (10%) of the $250,000 policy limit per vehicle minus the $5,000 deductible.