# Third District Court of Appeal

## State of Florida

Opinion filed March 25, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-0883
Lower Tribunal No. 19-8583-CA-01
_____

**Carlos Escobar, et al.,**
Appellants,

vs.

**Citizens Property Insurance Corporation,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Barbara Areces, Judge.

Mintz Truppman, P.A., and Timothy H. Crutchfield, for appellants.

Traub Lieberman Straus & Shrewsberry LLP, and David T. Burr and C. Ryan Jones (St. Petersburg), for appellee.

Before SCALES, C.J., and LOGUE and LOBREE, JJ.

LOGUE, J.

Carlos and Maria Escobar appeal the trial court's entry of final summary judgment for their insurer, Citizens Property Insurance

Corporation. The trial court found that the claimed loss—a piece of drywall in the hall bathroom ceiling that fell but did not result in structural damage or affect the structural integrity of the insured property—was not covered under the "Additional Coverage" for "Collapse" provision of the homeowner's policy ("Additional Coverage – Collapse provision"). Based on the definition of "collapse" and "abrupt collapse" in the relevant provision, we conclude the piece of drywall that fell from the ceiling did not constitute a "collapse" and, therefore, we affirm.

## BACKGROUND

The Escobars submitted a claim under their all-risk homeowner's insurance policy with Citizens, alleging they sustained damage to their property. After the claim was denied, the Escobars initiated the underlying breach of contract action. As relevant in this appeal, the Escobars sought coverage for a loss that occurred when a portion of drywall fell from the ceiling of the insured property's hall bathroom during Tropical Storm Alberto on May 26, 2018. In their operative Second Amended Complaint, the Escobars alleged they "were unable to use a portion(s) of their home for its intended purpose because of the collapse." The Escobars claimed that the loss was covered under the Additional Coverage – Collapse provision of their policy.

2

The Escobars attached their homeowner's policy issued by Citizens. The policy included an exclusion for loss "involving collapse," which provided:

> **SECTION 1 – PERILS INSURED AGAINST**
>
> **A. Coverage A – Dwelling And Coverage B – Other Structures**
>
>    . . . .
>
> **2.** We do not insure, however, for loss:
>
> > **a.** Involving collapse, including any of the following conditions of property or any part of the property, whether above or below the ground:
> >
> > > **(1)** An abrupt falling down or caving in;
> > >
> > > **(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or
> > >
> > > **(3)** Any spalling, crumbling, settling, cracking, shifting, bulging, racking, sagging, bowing, bending, leaning, shrinkage or expansion, or any other age or maintenance related issues, as such condition relates to (1) or (2).
> > >
> > > <u>except as provided in F.8. Collapse under Section I – Property Coverages</u>[.]

(emphasis added).

The following provision in F.8., which is at issue in this case, is an

3

exception to an exclusion, and it provides:

## SECTION I – PROPERTY COVERAGES

. . . .

## F. Additional Coverages

. . . .

### 8. Collapse

**a.** The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse.

**b.** For the purposes of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**c.** This Additional Coverage – Collapse, does not apply to:

**(1)** A building or any part of a building that is in danger of falling down or caving in;

**(2)** A building or any part of a building that is standing even if it has separated from another part of the building;

**(3)** A building or any part of a building that is standing, even if it shows evidence of spalling, crumbling, settling, cracking, shifting, bulging, racking, sagging, bowing, bending, leaning, shrinkage or expansion; or

**(4)** The plumbing system . . . .

4

**d.** We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if such collapse was caused by one or more of the following:

. . . .

**(3)** Insect or vermin damage, to a building or any part of a building, that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse[.]

The term "building" and phrase "any part of a building" are not defined in the policy, but "collapse, abrupt collapse" are defined in F.8.b. of the Additional Coverage – Collapse provision.

Citizens answered the operative complaint, denying material allegations. Moreover, in its affirmative defenses, Citizens asserted that there was no coverage under the Additional Coverage – Collapse provision. Citizens alleged that "[a]ny collapse under the policy must be to the building [or] part of the building and said collapse must be caused by one of the enumerated perils under the policy . . . ."

During the proceedings, the Escobars were deposed by Citizens in May 2022, after they filed their amended and second amended complaints adding allegations relating to a portion of the bathroom ceiling "collapsing." Their depositions reflect that during Tropical Storm Alberto on May 26, 2018, they were in bed for the evening, when they heard a commotion. Mr. Escobar

5

went into the hall bathroom and noticed that the ceiling had "collapsed." When he entered, a piece of wood fell on his head and he saw debris on the floor. Further, it was raining at the time, and there was a stream of water entering the bathroom. That evening, they got towels and pushed the water into the drain so that the water would not enter other parts of the house. The stream of water continued but most of it was going into the drain. The next day, they picked up the debris.

The Escobars' deposition testimony also reflect that Mr. Escobar called Citizens to report the loss, but their claim was denied. Mr. Escobar then called "Donald." Donald told Mr. Escobar that he could not repair anything inside because over 70% of the roof had to be repaired. The Escobars repaired the roof. After the roof was repaired, the Escobars once again began to enter the bathroom. The testimony further reflects that they started to use the bathroom because a piece of cardboard was installed, which, according to the Escobars, prevented stuff from falling inside of the bathroom, including insects.

In October 2022, Citizens filed a Notice of Stipulation of Facts, which the trial court approved, stating as follows:

1. Defendant hereby stipulates to the following facts:

    a. That on May 26, 2018, the interior ceiling of the Plaintiffs' guest/hallway bathroom abruptly fell or caved

in; and

    b. That the cause of the falling or caving in of the interior ceiling of the Plaintiffs' guest/hallway bathroom was due to decay and insect damage that was hidden from view and unknown to the "insureds."

2. Other than the foregoing stipulation, Plaintiff still carries the burden to prove a "collapse" occurred as defined by the subject policy and is not otherwise excluded by the subject policy, as well as the burden to prove any and all damages resulting therefrom.

The Escobars filed a Motion for Summary Judgment on Additional Coverage for Collapse. In response, Citizens argued that the falling of a portion of the ceiling drywall did not trigger coverage under the Additional Coverage – Collapse provision because there was no structural damage to the integrity of the building, and because the building was still standing.[1] Following a hearing, the trial court denied the Escobars' motion.

Citizens then filed a motion for final summary judgment, raising the same arguments raised in opposition to the Escobars' motion for summary

---

[1] Citizens filed the affidavit of an engineer, William Yanko, who opined that the "gypsum panels and finishes of the hall bathroom ceiling that reportedly fell are not part of the primary structural components of the building and they would not materially or substantially impair the basic structure of the building." Further, during his review of the photos and inspection of the property, he did not observe any damage to the structural components of the building, to the structural integrity of the building, or any damage that would affect the ability of the building to remain upright and standing at the same level for an indeterminate period of time.

7

judgment. At the hearing on Citizens' motion for final summary judgment, the trial court ruled that after reviewing everything submitted by the parties, there was no coverage under the policy's Additional Coverage – Collapse provision. The trial court concluded that the term "building" is not ambiguous and that the gypsum board (drywall) that fell from the ceiling of the bathroom is not part of the building. More specifically, the trial court ruled:

> THE COURT: . . . That thing, the gypsum board. That, as I see it, is not part of the building. You know, it's the building or part of the building. The building is a structure. It doesn't specifically define building in the policy but if you just look at a regular definition of building, you're talking about a structure.

> So it's not that anything that's attached to the building falls, but you're going to have buildings made from rock without any drywall at all. You can have buildings made from brick. You can have buildings made from wood. You know, the drywall is not necessarily – that's not part of a building. That's something that is used at times, depending on the type of building.

> But I don't see how the term is ambiguous. I don't see how based on the facts of this case, and, you know, there was no issue with regard to the trusses, you know, over – nothing that would affect or impair or in any way create an issue regarding the stability of the structure or the building, nothing that would prevent the use of any part of the building for its intended use.

> So I would grant summary judgment in favor of the defense. . . .

> . . . .

> . . . There's no coverage under collapse.

Following the trial court's ruling, the Escobars' counsels argued:

8

Judge, and our position is that the policy does specifically define collapse in different sections of the policy under the sinkhole, and it has a specific requirement of structural impairment. It excludes collapse in the general portion of the policy and also loss of structural integrity except for F8, which is the additional coverage for collapse. And under there, there is a specific definition of collapse which doesn't require any substantial material impairment.

It's our position that the ceiling is part of the building, and if the ceiling falls, obviously, in a bathroom, it makes it unsafe. And so, obviously, you can't use the bathroom for the intended purpose, you know, because of what's holding up the ceiling has failed, which is part of the structure, which would be furring strips and things of that nature, and that would fall under the definition of collapse under the policy.

. . . But we believe that under this case and even Kings Ridge,[2] it actually says the drop ceiling is part of that particular claim, that, you know, Kings Ridge said that the collapse would apply and that the language cannot be changed or modified in any way because it's additional coverage.

And we believe the Court by making these requirements of building impairment, we're changing the actual definition that was selected by the insurance company relative to their definition that they chose to use in their policy.

. . . .

. . . Other than the policy specifically defines that anything that's attached to the dwelling is part of the dwelling. That's a premise of insurance, where the cabinets are considered to be part of the building. The ceiling is regulated by the Florida Building Code as part of the structure of the building, so we respectfully disagree.

---

[2] Kings Ridge Cmty. Ass'n v. Sagamore Ins. Co., 98 So. 3d 74 (Fla. 5th DCA 2012).

9

In response, Citizens' counsel argued: "I think our only response to that, Judge, is we don't believe the definition in the policy applies. This is a carved-out coverage, additional coverage for a collapse, and those are specific provisions to specific policy coverages and issues, and they don't apply here."

The trial court then once again stated it was granting the motion in favor of Citizens. Thereafter, the trial court entered its final judgment for Citizens, granting Citizens' Motion for Final Summary Judgment "for the reasons stated on the record" and finding that "the damage to the insured property does not qualify as 'collapse' under the policy" and therefore, there is no coverage under the policy. The Escobars' timely appeal followed.

## STANDARD OF REVIEW

This Court reviews an order granting final summary judgment de novo. See Brownlee v. 22nd Ave. Apartments, LLC, 389 So. 3d 695, 698 (Fla. 3d DCA 2024). Further, as the interpretation of an insurance contract presents a question of law, this Court's standard of review is de novo. See Arguelles v. Citizens Prop. Ins. Corp., 278 So. 3d 108, 111 (Fla. 3d DCA 2019).

## ANALYSIS

The Escobars contend the trial court erred by entering final summary judgment in favor of Citizens based on its finding that the claimed loss—a

10

piece of drywall in the hall bathroom ceiling which fell but did not result in structural damage or affect the structural integrity of the insured property—was not covered under the Additional Coverage Collapse provision of the homeowner's policy. We disagree.

Here, the trial court's entry of summary judgment was based on its interpretation of the insurance policy. A trial court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(a).

Initially, the burden is on the insureds to prove that their property suffered a loss while their insurance policy was in effect. See Montes de Oca v. Citizens Prop. Ins. Corp., 338 So. 3d 951, 951 (Fla. 3d DCA 2022) ("[A]n insured claiming under an all-risks policy has the burden of proving that the insured property suffered a loss while the policy was in effect." (quoting Empire Pro Restoration, Inc. v. Citizens Prop. Ins. Corp., 322 So. 3d 96, 98 (Fla. 4th DCA 2021))). The parties do not dispute that the Escobars met their initial burden. As such, the burden then shifted to the insurer to establish that the loss was excluded from coverage under the terms of the policy. See Montes de Oca, 338 So. 3d at 951.

Here, Citizens established that the policy excludes losses involving

collapse <u>except</u> as provided in the policy's Additional Coverage – Collapse provision. As the policy provides for an exception to the exclusion, the burden then shifted back to the insured to show that the exception to the exclusion is applicable. <u>See</u> <u>id.</u> ("If there is an exception to the exclusion, the burden once again is placed on the insured to demonstrate the exception to the exclusion." (quoting <u>E. Fla. Hauling, Inc. v. Lexington Ins. Co.</u>, 913 So. 2d 673, 678 (Fla. 3d DCA 2005))).

"The scope and extent of insurance coverage is determined by the language of the insurance policy. Thus, the policy's text is paramount and must be the starting point of [a court's] analysis." <u>Catalina W. Homeowners Ass'n v. First Cmty. Ins. Co.</u>, 418 So. 3d 689, 694 (Fla. 3d DCA 2025) (quoting <u>Fojon v. Ascendant Com. Ins. Co.</u>, 393 So. 3d 806, 810 (Fla. 3d DCA 2024)). Courts construe the words within a policy "according to their plain meaning and view them in context of the policy as a whole." <u>Catalina W. Homeowners</u>, 418 So. 3d at 694. Moreover, "a term is not ambiguous simply because it is not defined, or it is complex and requires analysis." <u>Id.</u> at 695. To determine the plain meaning of a term, dictionaries can be used to aid "in establishing the publicly understood plain meaning of a word[.]" <u>Id.</u> However, a term is "ambiguous when it is of uncertain meaning, may be fairly understood in more ways than one, and is susceptible of interpretation in

12

opposite ways." Id. "When language in an insurance policy is ambiguous, a court will resolve the ambiguity in favor of the insured by adopting the reasonable interpretation of the policy's language that provides coverage as opposed to the reasonable interpretation that would limit coverage." Kings Ridge, 98 So. 3d at 77.

With these principles in mind, the text of the Additional Coverage – Collapse provision must be examined. This provision applies only to an "abrupt collapse." Based on the definition of "abrupt collapse" within the provision, there must be (1) an "abrupt falling down or caving in of a building or any part of a building" and (2) because of the "abrupt falling down or caving in" "the building or part of the building cannot be occupied for its intended purpose." (emphases added). Moreover, the abrupt collapse must result in a "direct physical loss to covered property" involved in the "abrupt collapse" and the "abrupt collapse" must be caused by one or more of the enumerated causes, including "[i]nsect or vermin damage, to a building or any part of a building, that is hidden from view, unless the presence of such damage is known to an 'insured' prior to collapse."

Based on the parties' stipulation, "the interior ceiling of the Plaintiffs' guest/hallway bathroom abruptly fell or caved in," and it was caused by "[i]nsect or vermin damage." The parties, however, disagree as to whether

13

the interior ceiling (drywall) that fell constitutes "part of the building." The term "building" and phrase "part of the building" are not defined in the policy.

Here, a piece of drywall from the bathroom ceiling abruptly fell or caved in. Thus, at issue is the phrase "part of the building." As applicable in the instant case, the definition of "Collapse, abrupt collapse means an abrupt falling down or caving in of . . . any part of <u>a</u> building with the result that <u>the</u> . . . part of <u>the</u> building cannot be <u>occupied</u> for its intended purpose." (emphases added). The Escobars' interpretation of this sentence is at odds with the language used. Substituting the word drywall for "part of a building" and "part of the building" reflects why the Escobars' interpretation is faulty— "Collapse, abrupt collapse means an abrupt falling down or caving in of . . . [drywall] with the result that <u>the</u> . . . [drywall] cannot be <u>occupied</u> for its intended purpose." (emphases added). Namely, drywall cannot be occupied. A house or a bathroom in the house can be occupied, but drywall cannot. Thus, based on this interpretation of the relevant provision, there is no coverage under the policy.

Moreover, assuming that the drywall is part of the building, the bathroom could still "be occupied for its intended purpose." The undisputed facts in the record show that the Escobars had cleaned up the debris and rainwater the following day. Although the Escobars averred in their affidavits

14

that they could not occupy the bathroom for its intended purpose, the Escobars have not claimed that the shower, toilet, or sink were not functioning as usual. Thus, despite the drywall that fell, the bathroom could still "be occupied for its intended purpose," and therefore, for this independent reason, the trial court correctly determined there was no coverage for the claimed loss under the Additional Coverage – Collapse provision. Accordingly, we affirm the final summary judgment entered in favor of Citizens.

Affirmed.